[No. H026182. Sixth Dist. Oct. 1, 2004.]

OGOCHUKU C. NWOSU, Plaintiff, Cross-defendant and Appellant, v. NWADINAUME FELLY UBA, Defendant, Cross-Complainant and Respondent.

## Counsel

Ogochuku C. Nwosu, in pro. per., for Plaintiff, Cross-defendant and Appellant.

Charles F. Cummins, Jr., for Defendant, Cross-complainant and Respondent.

## Opinion

**WALSH, J.**—Ogochuku C. Nwosu and Nwadinaume Felly Uba—both originating from Nigeria and who were friends for over 15 years—entered into a business transaction in 1995 involving Nwosu's residence. Over four years later, a dispute arose concerning the nature of that transaction. Uba claimed that Nwosu sold the residence to her for $200,000 because he had outstanding obligations and needed capital for his business. A deed, sales agreement, and escrow instructions supported Uba's contention. Nwosu, however, claimed that the transaction was, in reality, a refinancing arrangement under which

Uba took title, subject to the parties' oral agreement that, upon demand, she would reconvey the property to Nwosu at its original price.

Uba filed an unlawful detainer action to obtain possession of the premises. Nwosu filed a separate action to resolve the controversy concerning the transaction. His suit alleged several equitable claims, as well as a claim for fraud. Uba cross-complained, seeking to quiet title to the property and seeking recovery of money claimed to be due from loans made to Nwosu.

The court below proceeded first with a six-day bench trial of the equitable claims, expressly reserving a "second phase" jury trial of the legal claims, "depending on . . . the ruling . . . on the equitable issues." The court found in favor of Uba; it concluded that the disputed transaction was a sale, not a refinancing transaction disguised as a sale. Upon Uba's application, the court thereafter entered judgment, holding that there was no basis for a jury trial on Nwosu's fraud claim.

Nwosu appealed, claiming that the trial court's entry of judgment deprived him of his right to a jury trial. He also challenged the sufficiency of the evidence in support of certain findings by the court and the court's exclusion of impeachment evidence. We conclude that the trial court acted properly by conducting a trial of the equitable issues first and that its disposition of the equitable claims left nothing to be tried by a jury. Nwosu has failed to satisfy even minimal procedural requirements necessary to advance his remaining claims of error, and we therefore deem them to have been waived. We will affirm the judgment.

## FACTS

Nwosu emigrated to the United States from Nigeria in 1973. Uba, also from Nigeria, emigrated to this country in 1979. Nwosu and Uba met in 1979, and became friends. Nwosu described the relationship as "something of the nature of . . . brother and sister." Uba made several loans to Nwosu over the years, including cash loans.[1]

This dispute concerned real property located at 4559 Aptos Avenue, San Jose, California (Property). The Property was acquired by Nwosu in 1980. In a transaction that closed escrow on March 28, 1995, title to the Property passed from Nwosu to Uba (Transaction). Nwosu contends that the

---

[1] Nwosu disputed the existence of most of these loans at trial.

Transaction was a disguised refinancing arrangement in which he retained equitable title; Uba contends that the Transaction was a sale of the Property.[2]

In or about December 1994, Nwosu visited Uba at her home in Union City. He told her that he was in debt—including money owed to the I.R.S.—and that he wanted to sell the Property "to offset some of these debts."[3] Nwosu suggested that Uba invest money that she had received from refinancing her own home by purchasing the Property from him. Uba asked him to think about it. Several days later, Nwosu told Uba that he still wanted to sell the Property. He again suggested that Uba buy the Property, and that he wanted to rent it because he did not want his friends or family to know that he had sold it. Uba told Nwosu that this was acceptable.

One day later, Nwosu showed Uba some newspapers that indicated prices of homes in the area of the Property ranging from $181,000 to $189,000; he stated that he thought the Property had a higher value. He later told Uba that he had obtained an appraisal of the Property at $200,000. Uba agreed to buy the Property from Nwosu for $200,000. At the same time, the parties agreed that Nwosu could remain in possession of the Property after it was sold, so long as he paid the mortgage, taxes, insurance, and utilities.

On January 20, 1995, the parties signed a purchase and sale agreement involving the sale of the Property for $200,000; the agreement listed Nwosu as the seller and Uba as the buyer. The handwritten portions were written by Nwosu.

In January or February 1995, Uba and Nwosu went to S&L Home Loans. Nwosu made the arrangements for Uba to meet Jamal Rabbani, who assisted Uba in obtaining a loan to buy the Property.

Uba and Nwosu also signed joint escrow instructions dated March 16, 1995; the document identified Uba and Nwosu as buyer and seller, respectively. On the same day, Nwosu executed a grant deed conveying his interest in the Property to Uba.

---

[2] We recite the essential relevant facts "in the manner most favorable to the judgment, resolving all conflicts and drawing all inferences in favor of respondent. [Citation.]" (*Principal Mutual Life Inc. Co. v. Vars, Pave, McCord & Freedman* (1998) 65 Cal.App.4th 1469, 1475, fn. 1 [77 Cal.Rptr.2d 479].) In reciting the facts thus in the manner most favorable to the judgment, we acknowledge that there were many facts that were disputed. For instance, we recognize that Nwosu testified that the Transaction that Uba contends was a sale of the Property to her was, in fact, a refinancing arrangement. In brief, Nwosu testified that, under the refinancing agreement, he and Uba agreed that Uba would qualify for the loan; Nwosu would convey title to Uba; he would make the mortgage payments and pay the taxes; she would receive $1,000 for her assistance in refinancing the Property; and Uba "would convey the title back to [Nwosu] thereafter."

[3] Nwosu admittedly was in default under his existing loan against the Property as of January 1995 and did not tell Uba about this default.

On or about March 27, 1995, Uba obtained a cashier's check payable to Chicago Title Company in the amount of $45,286.78. Nwosu advised Uba of the amount, and Uba delivered the check to Nwosu, who told her that he would take it to the title company. Uba financed the balance of the Transaction with a loan in the sum of $160,000.

Escrow closed and the deed in favor of Uba was recorded on March 28, 1995. After payment of closing costs and amounts due to Nwosu's prior lender, Nwosu received a check through escrow in the amount of $143,689.51.

Approximately two weeks after close of escrow, Nwosu gave Uba a cashier's check in the amount of $46,287.78. This check was in partial repayment of loans Uba previously made to Nwosu that totaled $80,000.[4]

After the Transaction, Nwosu continued to occupy the Property under the rental arrangement described above. In the years between 1995 and 1999, Nwosu allowed a number of mortgage and tax delinquencies against the Property to accrue. There was a delinquent tax obligation in late 1995. Nwosu was behind in the mortgage payments in 1996, which resulted in the initiation of foreclosure proceedings. Foreclosure was averted ultimately through payment of over $14,000 to the lender in April 1997. There were other occasions after this instance in which Uba was notified that Nwosu had allowed the loan to become delinquent.

In or about late October 1999, Nwosu received a letter from Uba's attorney. In that letter, Nwosu was advised that he would need to vacate the Property by January 1, 2000, unless the parties entered into a valid and enforceable agreement for Nwosu's purchase of the Property. Up until that point, Nwosu had never told Uba that he owned the Property, that the Transaction was a refinance rather than a sale, or that he wanted her to deed the Property back to him.

In early 2000, Nwosu was served with a summons and complaint for unlawful detainer concerning the Property. The unlawful detainer was filed in Santa Clara County Superior Court (case No. DC00 390835, limited jurisdiction). Nwosu contested the matter, inter alia, on the grounds that there was no landlord-tenant relationship between the parties and that he had always been the actual owner of the Property. The case proceeded to trial, and a judgment for possession of the Property in favor of Uba was entered in the unlawful detainer proceeding on June 6, 2000.

---

[4] Nwosu, of course, disputed this contention. He claimed that the payment was reimbursement of the down payment made by Uba, plus a $1,000 fee for her assistance in the Transaction. The court, however, found against Nwosu concerning this claim.

## PROCEDURAL HISTORY

Nwosu initiated this action against Uba on May 15, 2000. He filed a second amended complaint on December 4, 2000 (complaint). In his complaint, Nwosu alleged six causes of action against Uba: (1) for specific performance of contract requiring Uba to quitclaim the Property to Nwosu; (2) to quiet title against Uba's claims to the Property; (3) for declaratory relief (adjudicating the rights of the parties relative to the competing claims of ownership in the Property); (4) to foreclose an equitable lien in Nwosu's favor relative to the Property; (5) for injunctive relief to prevent Uba from evicting Nwosu from the Property; and (6) for fraud in connection with Uba's alleged promise in 1995 that if Nwosu deeded apparent title to the Property to Uba, she would convey title back to Nwosu upon his demand therefor.

The essential factual allegation underlying the six claims was that, on or about March 28, 1995, Nwosu and Uba entered into an oral agreement under which Nwosu would refinance the Property with Uba's cooperation; the Property would be deeded to Uba in exchange for $1,000; Nwosu would pay all costs associated with the Property and "would continue to possess and own all equitable and legal interests" in the Property; and Uba would reconvey the Property to Nwosu "within a reasonable time upon demand."

Uba filed a cross-complaint against Nwosu. She alleged four causes of action: (1) to quiet title in her name to the Property; (2) for money lent by Uba in the approximate sum of $25,700; (3) for money paid by Uba on Nwosu's behalf in connection with curing defaults on a loan secured by a deed of trust against the Property (the approximate amount due being $16,800); and (4) for negligence in connection with Nwosu's failure to make loan payments required of him.

The case proceeded to trial on February 18, 2003.[5] At the outset, the court announced that it would try in the first phase the equitable issues (first through fourth causes of action of the complaint[6] and first cause of action of

---

[5] Although not germane to this appeal, there was a prior trial of Nwosu's equitable claims in March 2002 before a different trial judge. After the court found in Uba's favor and signed a statement of decision containing findings, inter alia, that the 1996 Transaction was a sale transferring fee simple title to the Property from Nwosu to Uba, the court entered judgment in Uba's favor. Thereafter, on August 15, 2002, the court granted Nwosu's motion for new trial "on the basis that the Court committed an error of law in excluding alleged other act/criminal conviction activity" of Uba.

[6] The court noted that the fifth cause of action for injunctive relief had been decided previously by two other judges.

the cross-complaint). It stated that a jury trial on Nwosu's fraud claim (i.e., the "second phase") would follow, "depending on what the ruling is on the equitable issues."[7]

The court heard testimony and argument over six trial days. Following the trial and submission of the equitable claims, the court issued a lengthy tentative decision, finding in favor of Uba that the Transaction constituted a sale of the Property. The court's statement of decision—containing detailed findings—was thereafter entered on April 3, 2003. It contained a formal finding in favor of Uba on the first through fifth causes of action of the complaint and on the first cause of action (quiet title) of her cross-complaint.

Uba's counsel then advised the court that, based upon the disposition of the equitable claims—including the finding that the Transaction was a sale of the Property and not a refinancing arrangement—there was nothing left to be tried as to the remaining fraud claim in Nwosu's complaint. Accordingly, Uba requested that the court enter judgment. Nwosu objected, and after Uba's submission of a further letter brief, the court entered judgment on May 7, 2003, determining "that there is no factual basis upon which to try the Sixth Cause of Action of Plaintiff's Second Amended Complaint and therefore enters judgment in favor of Defendant Uba" on that claim.[8]

Nwosu filed a notice of appeal on July 3, 2003. The appeal from the judgment was filed timely (Cal. Rules of Court, rule 2(a)(1)) and is a proper subject for appellate review. (Code Civ. Proc., § 904.1, subd. (a)(1).)

---

[7] The court stated: "I have discussed a number of items with counsel. And it is agreed that there will be a first phase, possibly a second phase depending on what the ruling is on the equitable issues. [¶] The Court will have before it on the first phase the first, second, third, fourth causes of action in the Second Amended Complaint as well as the First Cause of Action in the Second Amended Cross-Complaint which is quiet title. Those are all equitable issues. [¶] And the fraud cause of action, number six, would be subject to a jury trial should the Court rule in favor of the Plaintiff." Nwosu's counsel and the court then had the following exchange: "[Nwosu's counsel]: . . . I want to make it clear I don't waive any claim to a jury trial on all issues for a jury, and the jury fees have been posted. [¶] THE COURT: Do you object that any of the issues you said that I'm going to hear as a court trial are jury in nature? [¶] [Nwosu's counsel]: No, not at all. I'm saying to the extent there are issue of fact for a jury, a jury is not waived."

[8] On the same date, Uba dismissed without prejudice the legal claims (second, third and fourth causes of action) contained in her cross-complaint.

## DISCUSSION

### I. *Issues on Appeal*

Nwosu's claims of error, as best understood by this court, are as follows:

1. The trial court erred by entering judgment after the trial of the equitable issues; Nwosu's sixth claim for fraud remained pending, and entry of judgment deprived him of the right to a jury trial on this claim.

2. There was insufficient or no credible evidence supporting the court's findings that Nwosu—at the time of the March 1995 Transaction—had significant outstanding debts, and needed additional capital for his business.

3. There was insufficient or no credible evidence supporting the court's finding that Nwosu owed money to Uba at the time of the March 1995 Transaction.

4. The court erred in refusing to admit evidence proffered by Nwosu that attacked Uba's credibility, including Uba's use of several different names and Social Security numbers in other transactions.

We address each of these claims of error below.[9]

### II. *Claimed Denial of Right to Jury Trial*

#### A. *Trial of Legal and Equitable Claims*

A jury trial, "[a]s a general proposition, '. . . is a matter of right in a civil action at law, but not in equity.' [Citations.]" (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8 [151 Cal.Rptr. 323, 587 P.2d 1136] (*C & K Engineering*), quoting *Southern Pac. Transportation Co. v. Superior Court* (1976) 58 Cal.App.3d 433, 436 [129 Cal.Rptr. 912].) An action at law is one for which a jury trial was permitted at common law as it existed at the time our Constitution was first adopted in 1850. (*C & K Engineering, supra,* 23 Cal.3d at pp. 8–9.) "In determining whether the action

---

[9] Nwosu also asserts that Uba "filed a malicious cross-complaint" and argues that there was no factual basis for this pleading. It appears that Nwosu's objection is to the second through fourth causes of action of the cross-complaint, seeking money owed as a result of alleged loans by Uba and other sums allegedly advanced by Uba on Nwosu's behalf. Since Uba voluntarily dismissed without prejudice those causes of action of her cross-complaint, there is no basis for Nwosu's request that we review the merits of the claims underlying this pleading. To the extent that Nwosu invites us to review the dismissed claims with the implicit argument that they are somehow relevant to his claims of error, we decline to do so; the merits of the dismissed counts of the cross-complaint are not germane to Nwosu's appeal.

was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the gist of the action." (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 299 [231 P.2d 832]; see also *Walton v. Walton* (1995) 31 Cal.App.4th 277, 291 [36 Cal.Rptr.2d 901] (*Walton*) [" 'gist' of the action is ordinarily determined by the mode of relief to be afforded, though the prayer for relief is not conclusive. [Citation.]"].)

██ Where plaintiff's claims consist of a "mixed bag" of equitable and legal claims, the equitable claims are properly tried first by the court. A principal rationale for this approach has been explained as follows: " 'When an action involves both legal and equitable issues, the equitable issues, ordinarily, are tried first, for this may obviate the necessity for a subsequent trial of the legal issues.' [Citation.]" (*Richard v. Degen & Brody, Inc.* (1960) 181 Cal.App.2d 289, 295 [5 Cal.Rptr. 263], disapproved on another ground in *Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 498 [220 Cal.Rptr. 818, 709 P.2d 837]; see also 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 163, p. 191; see also Cal. Judges Benchbook: Civil Proceedings—Trial (CJER 1997) Requesting, Selecting, and Preinstructing Jury, § 4.5, p. 132.) Numerous cases having a mixture of legal and equitable claims have identified this same principle—that trial of equitable issues first may promote judicial economy. (See, e.g., *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671 [111 Cal.Rptr. 693] (*Raedeke*); *Walton, supra*, 31 Cal.App.4th at p. 293 [36 Cal.Rptr.2d 901], *Golden West Baseball Co. v. City of Anaheim* (1994) 25 Cal.App.4th 11, 50 [31 Cal.Rptr.2d 378]; *Strauss v. Summerhays* (1984) 157 Cal.App.3d 806, 813 [204 Cal.Rptr. 227]; *Jaffe v. Albertson Co.* (1966) 243 Cal.App.2d 592, 609 [53 Cal.Rptr. 25]; *Veale v. Piercy* (1962) 206 Cal.App.2d 557, 562–563 [24 Cal.Rptr. 91]; *Dills v. Delira Corp.* (1956) 145 Cal.App.2d 124, 129 [302 P.2d 397] (*Dills*).)

Thus, in *Dills*, the plaintiff sued for a declaration of his interest in a partnership (a radio show), and for an accounting of profits derived from the venture; his complaint included common counts for money had and received based upon his alleged share of the profits. (*Dills, supra*, 145 Cal.App.2d at p. 129.) The court tried the equitable issues first, determined that no partnership existed, and thus concluded that no trial need occur on the legal claims (common counts). (*Ibid.*) The appellate court rejected plaintiff's challenge that he was denied his right to a jury trial on the legal claims, holding that "when it was determined that [plaintiff] had no interest in the radio show and that no additional moneys were due him, the common counts performed no office. . . . Code of Civil Procedure, section 1062 . . . [10] was

---

[10] Code of Civil Procedure section 1062 provides, in part, that "no judgment under this chapter [concerning declaratory relief] shall preclude any party from obtaining additional relief based upon the same facts."

not intended to allow a litigant who is determined not to have any rights to relitigate his claim in quest of different relief." (*Id.* at pp. 130–131.)

Similarly, in a case involving competing mining claims, plaintiffs asserted both an equitable claim (title to property), and a legal claim (right to possession). (*Veale v. Piercy, supra,* 206 Cal.App.2d 557.) The court initially tried the equitable claim, holding that defendants' mining claims prevailed over plaintiffs' claims. (*Id.* at pp. 562–563.) In rejecting plaintiffs' claim of error that they were denied a right to a jury trial on the legal claim, the court held that "[o]nce the court decreed that defendants' placer mining claims prevailed over plaintiffs' lode mining claims, plaintiffs' demand for a jury trial of the legal issues became moot." (*Id.* at p. 563.)

*Peterson v. Peterson* (1946) 74 Cal.App.2d 312 [168 P.2d 474] (*Peterson*), involved claims and a procedural history closely analogous to our case. In *Peterson*, the administrator of decedent's estate asserted legal and equitable claims relative to certain real property once owned by decedent. (*Id.* at p. 316.) The first cause of action sought to quiet title to the property as against the claims of defendant Palmer—who acquired title through a foreclosure proceeding—and a bank that lent money to Palmer after the sale, which loan was secured by a deed of trust against the property. (*Id.* at pp. 316–317.) The sixth cause of action sought to cancel the bank's deed of trust and the lien against the property it created. (*Id.* at p. 320.) Plaintiff also alleged, as a fifth cause of action, that Palmer and other individual defendants committed fraud against decedent's estate resulting in Palmer's obtaining title, seeking damages for the value of the property. (*Id.* at pp. 320–321.) The trial court found against plaintiff on both the first cause of action to quiet title and the sixth cause of action to cancel the trust deed; at the same time, the court disposed of plaintiff's remaining causes of action. (*Id.* at p. 320.)

The appellate court in *Peterson* first acknowledged the propriety of the trial having proceeded first with a trial of the equitable claims. (*Peterson, supra,* 74 Cal.App.2d at p. 321.) It held that it was error for the trial court to dispose of the fraud claim without a jury trial *as to the individual defendants other than Palmer.* (*Id.* at p. 322.) The court concluded that plaintiff was *not* entitled to proceed on the fraud claim against defendant Palmer, because the trial court's determination of the equitable claims precluded recovery in plaintiff's favor: "The determination, however, of the first cause of action adversely to the plaintiff and that defendant Palmer had purchased said property in good faith and for value had the effect of also establishing that plaintiff was not entitled to any relief against Mrs. Palmer on . . . the . . . fifth cause[] of action. When the equitable issues were thus settled no legal issues remained to be tried as to Mrs. Palmer and the bank. [Citations.]" (*Id.* at pp. 321–322.)

Finally, in *Walton*, plaintiffs in consolidated actions sought quasi-specific performance of their father's oral contract to make a will, under which they claimed an entitlement to specific percentages of stock in the family business. (*Walton, supra*, 31 Cal.App.4th at p. 282.) Both complaints asserted claims for breach of contract, quasi-specific performance of oral contract to make a will, common count (money had and received), and for restitution. (*Ibid.*) The trial court severed the equitable claims from the legal claims. (*Id.* at p. 283.) Following a bench trial on the equitable claims, the trial court ruled in favor of plaintiffs, ordering quasi-specific performance of their late father's contract to make a will. (*Id.* at p. 285.) Plaintiffs thereafter dismissed their remaining claims, and the court entered judgment. (*Ibid.*) The defendant challenged the judgment, inter alia, on the basis that she was denied the right to a jury trial. (*Ibid.*)

The appellate court noted initially that plaintiffs' quasi-specific performance claims were equitable in nature and were not subject to a jury trial. (*Walton, supra*, 31 Cal.App.4th at p. 289.) It then addressed defendant's argument that it was improper to have the case tried as a bench trial because of the joinder of plaintiffs' legal claims (e.g., breach of contract) with the equitable claim. (*Ibid.*) The court cited settled law that a court may try a "mixed case" by proceeding first with the equitable claims—without a jury or with an advisory jury—and " 'if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury. [Citations.]' [Citation.]" (*Id.* at p. 293, quoting *Raedeke, supra*, 10 Cal.3d 665, 671.) The court concluded that defendant was not deprived of her right to a jury trial because the action "present[ed] a case of mutually exclusive claims where trial of equitable issues . . . eliminate[d] the need for a jury trial." (*Walton, supra*, 31 Cal.App.4th at p. 294.)

## B. *Review of Claims Alleged in the Pleadings*

Our analysis of Nwosu's complaint discloses that it combined one legal claim with five equitable claims for which there was no right to a trial by jury. The sixth claim for fraud in the Nwosu complaint was an action at law for which there was a right to a jury trial. (See *Raedeke, supra*, 10 Cal.3d at p. 671; *Fireman's Fund Ins. Companies v. Younesi* (1996) 48 Cal.App.4th 451, 458–459 [55 Cal.Rptr.2d 671].)

██ The first cause of action was essentially a claim for specific performance of the alleged refinancing agreement, which included a prayer for an order compelling Uba to execute a quitclaim deed transferring the Property to Nwosu. A claim for specific performance is an equitable one. (See *Walton, supra*, 31 Cal.App.4th at p. 287.)

Likewise, the second claim to quiet title was one in equity. (See *Estate of Phelps* (1990) 223 Cal.App.3d 332, 340 [273 Cal.Rptr. 2].) The fourth claim—captioned as one "to foreclose equitable liens"—was also an equitable action (see *Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 742 [31 Cal.Rptr.2d 659]), as was the fifth claim for injunctive relief. (See *Arciero Ranches v. Meza* (1993) 17 Cal.App.4th 114, 125 [21 Cal.Rptr.2d 127].)

Nwosu's third claim for declaratory relief—under which Nwosu sought a declaration that Uba had breached the alleged agreement under which she was to reconvey the Property to Nwosu upon demand and had forfeited her right to title to the Property—was an equitable action. We acknowledge that "[t]he mere fact that an action is one seeking declaratory relief, characterized generally in many decisions as being 'equitable,' does not answer the question of the right to a jury trial; the proper inquiry is the sometimes difficult one whether the *issues* are legal or equitable in nature. [Citations.]" (*Interinsurance Exchange v. Savior* (1975) 51 Cal.App.3d 691, 694 [124 Cal.Rptr. 239].) Thus, for instance, where declaratory relief seeking a declaration of no insurance coverage was a substitute for a breach of contract action, the action was held to be one at law. (*Manneck v. Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1300 [33 Cal.Rptr.2d 771].) In this instance, however, the gist of Nwosu's declaratory relief claim is a request that it be judicially determined that he is entitled to conveyance of title to the Property from Uba. As this claim appears to be a hybrid of his equitable claims for specific performance, to quiet title, and to foreclose an equitable lien, we conclude that it is similarly an equitable claim.

Uba's cross-complaint combined one equitable claim with three legal claims. The first cause of action to quiet title was an equitable claim. (See *Estate of Phelps, supra,* 223 Cal.App.3d 332, 340.) The second and third causes of action for money due under common count theories were legal claims. (See *Grossblatt v. Wright* (1951) 108 Cal.App.2d 475, 484–485 [239 P.2d 19] [common law action of debt for recovery of sums certain was legal, regardless of whether founded on contract, quasi-contract, or was created by statute]; *Fearey v. Gough* (1943) 61 Cal.App.2d 778, 779 [143 P.2d 711] [common count for money had and received was legal claim].) Similarly, Uba's fourth cause of action for negligence was a legal claim for which only damages were sought. (See *Ceriale v. Superior Court* (1996) 48 Cal.App.4th 1629, 1634–1635 [56 Cal.Rptr.2d 353].)

### C. *Nwosu's Claimed Denial of Right to Jury Trial*

Nwosu claims that he was denied the right to a jury trial on his legal claim for fraud. He asserts that the trial court erred by entering judgment following

its disposition in favor of Uba on the equitable claims, without first affording Nwosu a trial by jury on the sixth claim for fraud. We reject Nwosu's claim of error.

It is beyond question that the trial court had the authority to order a trial of the equitable claims before a trial of the remaining legal claim. (See *Raedeke, supra*, 10 Cal.3d 665, 671.) Indeed, this is the preferred procedure where the case includes both equitable and legal claims. (See 7 Witkin, Cal. Procedure, *supra*, Trial, § 163, p. 191.) In light of the fact that the gist of Nwosu's complaint sought relief from a court of equity—both substantively and numerically (i.e., from the standpoint that five of the six claims were equitable)—the court properly chose to hold a separate trial on Nwosu's specific performance, quiet title, and other equitable claims.

Having tried and decided Nwosu's equitable claims first—after hearing substantial testimony and after receiving extensive documentary evidence—the court concluded that this trial disposed of Nwosu's fraud claim; accordingly, it entered judgment. In essence, although not expressed in the judgment, "[a]s so often happens in such a situation the solution of the equitable issues disposes of the legal issues." (*Richard v. Degen & Brody, Inc., supra*, 181 Cal.App.2d 289, 295.) We agree with the trial court's conclusion that trial of the equitable issues disposed of the legal claim for fraud.

The sixth claim for fraud incorporated all prior allegations in Nwosu's complaint. Nwosu alleged that Uba represented that, if Nwosu deeded the Property to her pursuant to the refinancing agreement—under which Uba allegedly agreed in March 1995 to assist Nwosu with refinancing debt against the Property—she would quitclaim the Property back to Nwosu upon demand and tender of all sums paid by Uba for the Property. The fraud claim contained further allegations that Uba's representations were false when made; that the representations and promises were made without the intent to perform them; that Nwosu was damaged thereby, "in that apparent legal title to his real property stands of public record in the name of UBA, and he could and will lose all legal and equitable right, title, and interest in the real property if this court does not act to reinstate legal title to him"; and that Nwosu will suffer damages, including damages in the value of the Property, if he "does not regain all legal and equitable right, title, and interest" in the Property.

The allegations of the sixth cause of action were the same as those found in the equitable claims, save for (1) a request for damages, and (2) calling Uba's conduct in the transaction a "false promise," instead of a breach of contract. Clearly, the fraud claim was integrally related to the allegations supporting equitable relief (i.e., the allegation that Uba failed to comply with

the alleged refinancing agreement). The trial court, however, in deciding the equitable claims, concluded that there *was no such refinancing agreement.*

The court concluded that the Transaction was, in fact, a bona fide sale of the Property from Nwosu to Uba and "was not an 'equitable mortgage.' " Specifically, it found the following facts in support of its conclusion that Nwosu had sold the Property to Uba in March 1995: (1) the parties initially made an oral agreement under which Uba would buy the Property at its then fair market value of $200,000; (2) the purchase price was the result of arm's length negotiation based upon an independent appraisal; (3) Nwosu and Uba executed a purchase and sale agreement memorializing the sale transaction on January 20, 1995; (4) the parties signed joint escrow instructions to Chicago Title on March 16, 1995, whereunder Uba would pay $200,000 to Nwosu through escrow in connection with the sale; (5) Nwosu executed a grant deed in favor of Uba that was recorded March 28, 1995; (6) before the sale, Nwosu had incurred substantial indebtedness, including debts claimed by taxing authorities, and was also in need of additional capital for his business; (7) Uba paid $45,286.78 to the title company, representing the amounts required for the down payment and closing costs; (8) Uba financed the balance of the purchase price with a loan of $160,000; and (9) Nwosu received $143,689.51 at close of escrow for the sale of the Property.[11]

The court found further that the only agreement the parties entered into concerning the transfer of the Property back to Nwosu was an oral agreement that Uba "would offer to sell the Property back to Nwosu at an undetermined future date and at the fair market value of the [P]roperty at that time." The court also specifically found that Uba had not breached that oral agreement.

The court's findings that (1) the Transaction was a sale and not a refinancing arrangement, and (2) Uba did not agree to convey the Property back to Nwosu on demand and at its original price, clearly disposed of the legal claim of fraud. Having concluded that there was no "equitable mortgage" associated with the Transaction—and that there was no agreement to reconvey the Property—these conclusions (and their underlying factual findings) precluded a subsequent finding that Uba falsely promised to convey title to the Property back to Nwosu on demand.

Thus, the case is procedurally similar to *Peterson, supra,* 74 Cal.App.2d 312. There, the court first decided in defendant's favor the equitable claims to set aside the trustee's sale, which disposition had the effect of precluding plaintiff's recovery for fraud against the buyer at the trustee's sale. (*Id.* at

---

[11] The findings listed in the text were contained in the court's statement of decision, filed April 3, 2003.

pp. 321–322.) Here, the fact that the trial of the equitable issues first resulted in factual findings that implicated the legal claims does not mean that Nwosu was improperly denied the right to a jury trial. (See *Walton, supra,* 31 Cal.App.4th 277, 287 [no right to jury trial for specific performance, "even though such action implicates legal issues regarding contract formation"].)

■ Stated otherwise, the clear import of the cases authorizing an initial trial of the equitable claims—cited in part II.A., *ante*—is this: The court may decide the equitable issues first, and this decision *may* result in factual and legal findings that effectively dispose of the legal claims. This is precisely what happened here, where the court's determination of the equitable issues in favor of Uba precluded Nwosu's recovery under his fraud theory.

■ Res judicata gives "*conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." (7 Witkin, Cal. Procedure, *supra,* Judgment, § 280, p. 820.) If the subsequent litigation is "on a *different cause of action,* the former judgment . . . is effective as a *collateral estoppel,* i.e., it is conclusive on issues actually litigated between the parties in the former action." (*Id.,* § 281, p. 821.)

■ In the present case, had Nwosu's equitable and legal claims been litigated in separate actions, the prior determination of the equitable claims would have resulted in Nwosu being collaterally estopped from asserting his legal claims. We acknowledge that the joinder of Nwosu's claims in one action prevents application of this doctrine of collateral estoppel. The fact, however, that the parties chose to litigate their claims in a single action cannot change the impact of the court's prior determination of certain issues in the equitable phase of the trial upon the remaining legal claims. Just as the parties are bound by collateral estoppel where issues are litigated in a prior action, so, too, do issues decided by the court in the equitable phase of the trial become "conclusive on issues actually litigated between the parties." (7 Witkin, Cal. Procedure, *supra,* Judgment, § 281, p. 821.) Thus, as was the case in *Peterson, supra,* 74 Cal.App.2d 312, a form of quasi-collateral estoppel occurred here; the prior disposition of the related claims by the court in equity estopped Nwosu from relitigating the already determined issues in his claims at law.

Nwosu contends further that, because the court decided the equitable issues on the basis of a clear and convincing standard of proof—while he would have only needed to prove his fraud claim by a preponderance of the evidence—he was entitled to a jury trial on the fraud claim. We reject this claim. The court, indeed, concluded that Nwosu did not rebut the presumption that Uba, as the owner of legal title, was the owner of the Property by clear and convincing evidence, as required under Evidence Code section

662.[12] The court, however, went on to conclude that "Nwosu did not prove his allegations even if the court were to consider his burden of proof to be by a preponderance of [the] evidence." Thus, there is no merit to Nwosu's contention that he was deprived of the right to a jury trial because the equitable claims had a higher standard of proof than required for the fraud claim.

The trial court properly held a separate trial of Nwosu's equitable claims; they were the predominant claims in the complaint. Having done so, the court's findings with respect to the equitable claims necessarily disposed of the fraud claim.[13] Nwosu was not deprived of his right to a jury trial because the action "present[ed] a case of mutually exclusive claims where trial of equitable issues . . . eliminate[d] the need for a jury trial." (*Walton, supra,* 31 Cal.App.4th 277, 294.)

### III. *Claimed Insufficiency of the Evidence*

Nwosu claims that the evidence was either insufficient or not credible as to several factual findings by the trial court, namely, that, at the time of the Transaction, Nwosu (1) had significant outstanding debts, including those to taxing authorities, (2) needed additional capital for his business, and (3) owed money to Uba.[14] Nwosu's appellate briefs—over a number of pages and interspersed throughout the briefs—contain a lengthy recitation of facts he

---

[12] Evidence Code section 662 provides as follows: "The owner of the legal title to property is presumed to be the owner of the full beneficial title. This presumption may be rebutted only by clear and convincing proof."

[13] Uba raises a host of other reasons why she believes that the court's entry of judgment was proper, including arguments that Nwosu's fraud claim is barred (a) by collateral estoppel; (b) by judicial estoppel; (c) because of "issue preclusion"; (d) because the court had the power to treat Uba's dismissal request as a motion for judgment on the pleadings, under Code of Civil Procedure section 438; (e) because a defendant may move for judgment after the plaintiff has completed presentation of its case (under Code Civ. Proc., § 438); and (f) because of the court's power to grant a directed verdict under Code of Civil Procedure section 630. The merits of these various arguments are questionable, at best. We need not address them separately here, however, since we have concluded that the trial court's entry of judgment following the trial of the equitable claims was proper.

[14] Uba indicates in her brief on appeal that Nwosu contends "that the evidence does not support the trial court's findings and decision regarding the equitable causes of action." Our careful review of Nwosu's appellate briefs do not lead us to conclude that Nwosu makes this sweeping contention. Rather, we believe that Nwosu claims on appeal that there was insufficient or no credible evidence supporting particular factual findings identified in the text. Even assuming, arguendo, that Nwosu contends that there was insufficient evidence to support the court's overall conclusions that resulted in the denial of Nwosu's equitable claims, he did not make this argument on appeal in any adequate fashion (i.e., presentation of cogent argument with specific citations to the record); we therefore deem such argument—assuming it even to have been advanced—to have been waived. (See *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [85 Cal.Rptr.2d 521].)

claims were presented at trial. Near the end of his opening brief, Nwosu also recites evidence purportedly shown at trial that supports his insufficiency of the evidence argument. Nwosu's briefs are devoid of citations to the reporter's transcript and are thus in dramatic noncompliance with appellate procedures.

 Rule 14 of the California Rules of Court provides in relevant part that all appellate briefs *must* "support any reference to a matter in the record by a citation to the record." (Cal. Rules of Court, rule 14(a)(1)(C).) Further, an appellant's opening brief *must* "provide a summary of the significant facts limited to matters in the record." (*Id.*, rule 14(a)(2)(C).) Nwosu has failed to adhere to the mandatory requirements of these court rules. As noted, factual references in Nwosu's appellate briefs are devoid of citation to the reporter's transcript in violation of rule 14(a)(1)(C). Further, to the extent that he purports to include a summary of significant facts under rule 14(a)(2)(C), that summary is one-sided and, again, without citation to the record.

"The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 [115 Cal.Rptr.2d 705].) Thus, "[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived. [Citation.]" (*Duarte v. Chino Community Hospital, supra*, 72 Cal.App.4th at p. 856; accord, *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [75 Cal.Rptr.2d 27] (*Guthrey*).)

For instance, in *Guthrey*, appellant contended, without specific citation to the record, that " 'a plethora of admissible evidence' indicates a triable issue of fact exists," which precluded the granting of summary judgment. (*Guthrey, supra*, 63 Cal.App.4th at p. 1115.) The appellate court rejected this challenge, concluding that appellant, through noncompliance with appellate procedure, had thereby waived such challenge on appeal. (*Id.* at pp. 1115–1116.)

 Moreover, an attack on the evidence without a fair statement of the evidence is entitled to no consideration when it is apparent that a substantial amount of evidence was received on behalf of the respondent. (*Estate of Palmer* (1956) 145 Cal.App.2d 428, 431 [302 P.2d 629].) Thus, appellants who challenge the decision of the trial court based upon the absence of substantial evidence to support it " 'are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error is deemed waived.' [Citations.]" (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

 Nwosu is not exempt from the foregoing rules because he is representing himself on appeal in propria persona. Under the law, a party may

choose to act as his or her own attorney. (*Paradise v. Nowlin* (1948) 86 Cal.App.2d 897, 898 [195 P.2d 867]; *Gray v. Justice's Court* (1937) 18 Cal.App.2d 420, 423 [63 P.2d 1160].) "[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys. [Citation.]" (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210 [51 Cal.Rptr.2d 328].) Thus, as is the case with attorneys, pro. per. litigants must follow correct rules of procedure. (*Kabbe v. Miller* (1990) 226 Cal.App.3d 93, 98 [275 Cal.Rptr. 893]; *Bistawros v. Greenberg* (1987) 189 Cal.App.3d 189, 193 [234 Cal.Rptr. 377] [self-represented party "held to the same restrictive procedural rules as an attorney"]; *Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638–639 [178 Cal.Rptr. 167] [same].)

Clearly, Nwosu has failed to comply with appellate rules of procedure. His claims of insufficiency of the evidence are supported by no citation to the reporter's transcript, and his recitation of facts fails to discuss all evidence material to his contentions. We therefore find that Nwosu has waived such challenges on appeal.

## IV. *Exclusion of Evidence Concerning Uba's Credibility*

In a one-sentence paragraph at the end of his opening brief, Nwosu asserts that the trial court committed reversible error by excluding "proffered evidence of the lack of truth in Uba, including her use of several different names and Social Security numbers." Nwosu does not provide the requisite citations to the reporter's transcript concerning this issue; indeed, he offers nothing beyond the general contention quoted in the preceding sentence. Based upon the same authorities that we have discussed in part III., *ante*, we conclude that Nwosu has waived this claim on appeal; he has neither developed the issue, nor supported his claim with appropriate citations to the record.[15]

---

[15] Nwosu's waiver of this contention notwithstanding, our review of the record discloses that the trial court, in fact, received substantial evidence proffered by Nwosu to attack Uba's credibility. Uba was cross-examined concerning her use of different names, and driver's licenses. In other testimony, one witness was examined regarding Uba's reputation in the community for untruthfulness, and another witness was examined concerning Uba's providing her assistance in obtaining a false identification. The court *did* exclude testimony from an investigator of the Department of Motor Vehicles, inter alia, under Evidence Code section 352 (i.e., the probative value of such evidence was substantially outweighed by the probability that its admission would be unduly time consuming, would "create substantial danger of undue prejudice," or would be confusing). There is nothing we have seen in the record that would cause us to conclude that this evidentiary ruling was an abuse of discretion by the trial court. (See *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1310 [116 Cal.Rptr.2d 700] [trial court's exclusion of evidence under Evidence Code section 352 will be reversed on appeal only where "trial court 'exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]"].)

## DISPOSITION

The judgment is affirmed.

Rushing, P. J., and McAdams, J., concurred.