Filed 3/30/23  Tidwell v. Tidwell CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SANDRA TIDWELL,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JACKSON TIDWELL et al.,<br><br>    Defendants and Respondents. | A164099<br><br>(San Mateo County<br>Super. Ct. No. CIV536345) |

Plaintiff Sandra Tidwell (plaintiff or Sandra) and her husband, Jackie Tidwell, transferred title of their house to their son, Jackson Tidwell, in 2007, and the family continued to live in it together.[1]  Years later, after Jackie's death, Sandra brought this action against Jackson and his wife, Dena Tidwell (collectively, defendants), alleging a variety of causes of action arising out of their effort to evict her from the home.  The trial court heard the equitable causes of action first, ruled in favor of defendants, and concluded its findings disposed of most of the remaining causes of action.  Sandra appeals the ensuing judgment, and we affirm.

---

[1] Because the parties to this action, as well as Sandra Tidwell's late husband, share the same last name, we refer to them by their first names, intending no disrespect.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Initial Observations

At the outset, we note two fundamental problems with the recitation of facts found in Sandra's opening brief. First, it includes many factual assertions unsupported by citations to the record. With few exceptions, the record citations in the opening brief's statement of facts are to the allegations of the complaint, not to the evidence presented to the trial court. We are not required to search the record on our own seeking error, and an argument without the necessary citations to the record may be deemed forfeited. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 (*Nwosu*).)

Second, plaintiff's recitation is one-sided and omits relevant facts that support the trial court's decision. Thus, it violates a fundamental rule of appellate procedure: an appellant must set forth fairly all the evidence, not only that favorable to the appellant, or risk forfeiting a challenge to the sufficiency of the evidence to support the judgment. (*Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 650–651 (*Estes*); *Nwosu, supra*, 122 Cal.App.4th at p. 1246.) For our recitation of the factual background of this case, we have accordingly relied on the summary in respondents' brief.

### II. Background of the Dispute

*Events Before Transfer*

Sandra and Jackie bought a house in South San Francisco (the house) in November 1977. At some point, they also purchased a house in Texas, where Jackie had family and wanted to live. Sandra expressed interest in moving to Florida instead.

Jackson was born in 1977, and except for brief periods lived in the family home his entire life. He began paying rent to his parents around the

2

age of 18. In 1999 or 2000, Jackie told Jackson's then-girlfriend, Angelina M., that he wanted Jackson to have the house.

Jackie and Sandra began an addition to the house in 2005, and Jackson started paying the mortgage payments at that time because his parents could no longer afford to do so. Jackie and Sandra initially contributed between $1,000 and $1,200 a month. They discussed their plans for Jackson to take over the entire house when Jackie and Sandra were ready to move to another location.

*Transfer of Title*

On October 6, 2006, Jackie and Sandra signed a document entitled "Request to Transfer Title," which recited that they "wish[ed] to transfer title to our son, [Jackson], as a gift." Sandra gave the document to Jackson and told him to keep it in his files in case anyone had questions about who owned the house.

Sandra signed an interspousal transfer deed on January 12, 2007, transferring her interest in the house to Jackie. Jackie then granted his interest in the property to Jackson. Sandra testified that it was her understanding that she and Jackie would continue to live downstairs, and that Jackson would live upstairs.

At the time of the transfer, the market value of the property was $642,000, and Jackson had already spent more than $173,000 on mortgage, taxes, insurance, and expenses for the addition. Afterward, Jackson paid for all house expenses, including mortgage, insurance, utilities, maintenance, and repairs.

In 2007, Sandra, Jackie, and Jackson borrowed approximately $200,000—on top of the existing principal balance of $250,000—to finance an extension of the house.

3

*Jackie's Statements About the Transfer*

Around 2007, while the house was being refinanced, Jackie told his daughter that he and Sandra were giving the house to Jackson. She asked him how the paperwork would be handled, and he said Sandra would take care of it.

Angelina M. heard conversations in which Jackie and Sandra indicated that since Angelina and Jackson were making the full mortgage payments on the house, it should be in Jackson's name so he would receive the tax benefits.

Before the transfer, Jackie told Jackson he wanted Jackson to have the house to raise his family in and that Jackie planned to move to enjoy his retirement. Jackie did not suggest to Jackson that his rights as owner would be restricted in any way.

*Later Events*

In 2012, when Jackie was diagnosed with cancer, Sandra told Jackson they could only pay him $500 a month, and Jackson did not object to the decrease. Jackie died in December 2012.

Jackson and Dena married and had children. As their family grew, they needed more space, and they suggested building an addition to the house. Sandra "shot that down." Jackson suggested other living arrangements for Sandra, but the discussions "[went] nowhere." At one point, she "got in [his] face, started poking at [him]," and threw a vase at him. She also threatened to burn the house down. At times, she blocked the driveway so that Dena could not get out of it. Dena asked Sandra not to block the driveway and said she would have Sandra's car towed if she blocked the driveway again. Sandra "[went] crazy and start[ed] banging on the doors and windows with a stick or a hammer." She then called Jackson and left a

message saying he should go home immediately or she would punch Dena—then pregnant—and knock her tooth out. Jackson feared for the safety of his family, and he began eviction proceedings.

During his deposition, Jackson was asked whether Jackie "would go along with evicting your mother from the house today," to which he replied, "No." When asked at trial what Jackie would want to know about the parties' situation, Jackson replied that Jackie would want to know all of Sandra's actions and all the events that led up to the court case, and "I don't think he would be very happy with it."

### III.    Procedural History

Sandra filed this action in November 2015. In the operative third amended complaint, she alleged 15 causes of action: elder abuse; fraud and deceit; rescission; cancellation; breach of contract; reformation; quiet title; conspiracy; breach of statutory duty to support a parent; adverse possession; intentional interference with inheritance; common count for money owed; breach of the covenant of good faith; intentional infliction of emotional distress; and negligent infliction of emotional distress. Among the requested remedies, she sought an order declaring Jackson holds his interest in the house in a constructive trust with a duty to transfer fee title to plaintiff, an order quieting title to the house in plaintiff, a determination that the deed had been rescinded or cancelled, an order that defendants convey their interest in the house to plaintiff; support pursuant to Family Code sections 4400 et seq. and Penal Code section 270c, and $25,000. Defendants cross-complained for assault, battery, intentional infliction of emotional distress, and breach of contract.

When the matter was set for trial, the parties stipulated that the equitable causes of action would be bifurcated and tried first in a court trial.

The court listed as equitable the causes of action for rescission, cancellation, reformation, and quiet title, as well as the defenses of equitable estoppel, laches, and unclean hands, and indicated that it would retain "flexibility" if other equitable issues arose during trial.

The trial court ruled in favor of defendants on the equitable causes of action, found Sandra did not acquire title by adverse possession, and quieted title in favor of Jackson and Dena on January 30, 2018. It found Sandra's claims were barred by laches and estoppel because, between 2007 and 2015, Sandra accepted the benefit of Jackson shouldering the burden of the loan. And, the court ruled, Sandra did not overcome the presumption that the holder of legal title holds the full beneficial title to a property. (See Evid. Code, § 662.) According to the court, Sandra was aware of the transaction, there was adequate consideration for the transfer in the form of the amounts Jackson expended for loan payments and improvements before the transfer, and his subsequent actions in carrying the burden of the loan for which his parents did not qualify were consistent with and satisfied the fiduciary duty of a son to his parents. The court concluded the evidence did not show the parties formed an agreement that the property was to be held in trust for the parents, but at most that they agreed that Sandra and Jackie could temporarily occupy a portion of the house on a month-to-month basis. As a result, according to the court, Jackson's action in attempting to evict Sandra—especially in light of the "frictions" between them—was not a breach of fiduciary duty.

The court also considered and rejected Sandra's argument that Jackson admitted in his deposition that Sandra had a beneficial interest in the house. It found that the deposition testimony that Jackie would not "go along with evicting [Sandra] from the house today" was an admission not that Sandra

6

had a beneficial interest in the house, but rather that Jackson thought Jackie "wouldn't like it very much if he tried to evict Sandra." Another statement in Jackson's deposition, in which he replied in the negative when asked whether at the time of the grant deed he believed he was "creating a right in yourself and the intent to evict your parents," indicated that at the time the parties intended that Jackie and Sandra would remain in the house temporarily and that Jackson would have full legal title and full beneficial interest as owner of the house.

At the parties' request, the trial court then considered what issues remained to be determined and whether plaintiff was entitled to a jury trial on any remaining issues. It concluded on April 27, 2021 that its findings in the equitable portion of the trial were dispositive of several of the claims at law—elder abuse, fraud and deceit, breach of contract, intentional interference with inheritance, breach of the covenant of good faith, conspiracy, and negligent and intentional infliction of emotional distress—because they relied on the same material facts the court had already adjudicated. As to the remaining two causes of action, the court ruled that they could go forward but that plaintiff was not entitled to a jury trial, on the ground the claim for parental support was equitable in nature and the common count was merely ancillary to the equitable claims.

Plaintiff then moved for leave to file a fourth amended complaint to state a cause of action for breach of fiduciary duty. The trial court denied the motion.

The parties stipulated that plaintiff would dismiss her causes of action for parental support and common count; that defendants would dismiss their cross-complaint; that the trial court would enter judgment on the April 27,

2021 order; and that each party would retain its right to appeal. The trial court entered judgment accordingly.

## DISCUSSION

### I. Right to Jury Trial

Plaintiff's first contention is that the trial court deprived her of her due process right to a jury trial when it concluded its rulings on the equitable claims disposed of many of her claims at law. She argues she did not anticipate that the court would resolve her legal claims as well, she did not waive her right to a jury on those claims, and she was therefore deprived of the opportunity to present evidence independent of the equitable causes of action.

As a general matter, a party is entitled to a jury trial in a civil action at law—one for which a jury trial was permitted at common law in 1850, when our state constitution was adopted—but is not entitled to a jury in an action sounding in equity. (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 354; *Nwosu, supra,* 122 Cal.App.4th at p. 1237.) Where a single action includes both legal and equitable causes of action, the court may try the equitable issues first, without a jury; " 'if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury.' " (*Orange County*, at p. 355, quoting *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671.) This " 'equity first preference' is a long standing feature of California law and has always been viewed as fully compatible with the right to jury trial embodied in the California Constitution." (*Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 317.) Thus, the trial court's resolution of equitable issues may properly preclude

8

consideration of legal claims. (*Hoopes v. Dolan* (2008) 168 Cal.App.4th 146, 157.)

"Trial courts are encouraged to apply this 'equity first' rule because it promotes judicial efficiency by obviating the need for a jury trial." (*Darbun Enterprises, Inc. v. San Fernando Community Hospital* (2015) 239 Cal.App.4th 399, 409; see *Nwosu, supra*, 122 Cal.App.4th at p. 1238.) A plaintiff who alleges both legal and equitable claims may preserve the right to submit legal claims to a jury by abandoning the equitable claims. (*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2019) 43 Cal.App.5th 988, 1000.) If the plaintiff does not do so, the judge's findings in connection with the equitable claims are binding. (*Ibid.*)

This procedure is illustrated in *Nwosu*, a case with striking similarities to the one before us. One friend, Ogochuku Nwosu, transferred title of his house to another, Nwadinaume Uba. Disputes later arose, and Uba claimed Nwosu sold the residence to her because he needed the money; Nwosu contended the transaction was essentially a refinancing arrangement under which Uba took title subject to an agreement that she would reconvey the property to Nwosu on demand. (*Nwosu, supra*, 122 Cal.App.4th at pp. 1231–1232.) Uba filed an unlawful detainer action, and Nwosu filed a separate action seeking equitable relief and alleging a single legal claim, for fraud. Uba cross-complained, seeking to quiet title and recover money allegedly due. (*Id.* at p. 1232.) The trial court first held a bench trial of the equitable claims and ruled in Uba's favor, concluding the transaction was a sale. The court then entered judgment in favor of Uba on Nwosu's cause of action for fraud, the single claim at law. (*Ibid.*) On appeal, Nwosu claimed he was wrongfully deprived of his right to a jury trial on his fraud claim. (*Ibid.*) The appellate court rejected this contention, concluding the fraud claim was based on

9

allegations that the trial court decided against Nwosu when deciding the equitable claims, and as a result there was nothing left to be tried by a jury. (*Id*. at pp. 1232, 1241–1244.)

The trial court properly followed the same procedure here. After making the findings discussed above in the equitable phase of the trial, the court concluded its findings contravened the showing plaintiff must make to prevail on all but two of her remaining causes of action.

Plaintiff asserts that she should nevertheless have been permitted to introduce additional evidence relevant to her legal, but not to her equitable, claims. But this in effect is an effort to relitigate factual issues already determined by the trial court. The precluded causes of action are all based on allegations at odds with the court's findings that Jackson owned full beneficial title, that the transfer of title was a gift, that Sandra was aware of the transfer, that there was adequate consideration for the transfer, that there was no side agreement that Jackie and Sandra would keep a beneficial interest in the house, that Jackson did not violate his fiduciary duties to his parents, that at most the parties agreed that Jackie and Sandra could rent their portion of the premises temporarily, that serious friction developed in the home, and that Jackson had the right to evict Sandra.

For instance, the cause of action for elder abuse depends on allegations that Jackson used undue influence, misrepresentation, and fraud to induce Jackie and Sandra to transfer title to the house. The fraud and deceit claim is based on allegations that Jackson told Jackie and Sandra that they would continue to have a right to own and occupy the property despite the transfer of title. The contractual causes of action were based on an alleged agreement that Jackson would hold only temporary legal title and that Sandra and Jackie would occupy and retain a possessory interest in the family home.

10

The conspiracy cause of action depends on allegations that the transfer was void and that Jackson infringed on Sandra's interests in the home. The claim for intentional interference with inheritance is based on allegations that Jackson fraudulently induced Jackie and Sandra to transfer title to him. And the causes of action for intentional and negligent infliction of emotional distress incorporate all previous allegations and allege Jackson and Dena's behavior was outrageous and breached a duty of care to Sandra. Sandra suggests no manner in which these allegations can be reconciled with the trial court's factual findings on the equitable claims. Nor does she show that she was unable to present any evidence relevant to these findings in the court trial. We thus reject plaintiff's contention that she was wrongfully deprived of her right to a jury trial on her legal claims.

## II.    Substantive Challenges

Plaintiff makes several substantive challenges to the trial court's rulings in the equity phase: she contends that Jackie did not intend to transfer full title, with all incidents of ownership, to Jackson; that title to the house was held in trust for the benefit of Jackie and Sandra and the court should have recognized a constructive trust; that the grant to Jackson was unconscionable because there was no meaningful consideration; and that defendants were not prejudiced by plaintiff's delay in asserting her rights.

These contentions, which are fundamentally challenges to the factual bases for the trial court's ruling, fail. Our review of factual challenges is for substantial evidence (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061) and, as we have explained, an appellant challenging the sufficiency of the evidence must set forth all the evidence on the point, not merely the evidence favorable to the appellant (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881). Far from meeting this standard, the

opening brief's summary of facts is one-sided, relies largely on the allegations of appellant's complaint, and almost entirely ignores the evidence actually presented at trial, including the evidence supporting the trial court's decision that the court discussed at length in rendering its ruling.

For instance, there was evidence that Jackson was making the full mortgage payments before the transfer, as well as paying taxes, insurance, and expenses for the addition, all totaling more than $173,000; that Jackie and Sandra intended to move to another state and have Jackson take over the entire house; that both Sandra and Jackie expressed in writing their intention to transfer title of the house as a gift and Sandra told Jackson to keep the document in case any questions about ownership arose; that Sandra handled the paperwork for the grant; that Jackie never suggested to Jackson that his ownership rights would be restricted; that Jackson continued to pay the mortgage and other expenses after the transfer; and that Sandra's actions and threats made it untenable for Jackson, Dena, and their children to continue sharing a house with her. In her opening brief, Sandra simply ignores this evidence, and she makes no effort to show that it does not support the trial court's findings. She has thus forfeited her substantial evidence argument. (See *Estes*, *supra*, 51 Cal.App.5th at pp. 650–651; *Nwosu*, *supra*, 122 Cal.App.4th at p. 1246.)[2]

## DISPOSITION

The judgment is affirmed.

---

[2] To the extent plaintiff raises new arguments in her reply brief, we do not consider them. (*Foxen v. Carpenter* (2016) 6 Cal.App.5th 284, 296.)

TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.

*Tidwell v. Tidwell et al.* (A164099)