Filed 7/6/21  Smith v. Monk CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| EVELYN WARD SMITH,<br><br>    Petitioner and Respondent,<br><br>v.<br><br>PAMELA RENY MONK,<br><br>    Respondent and Appellant. | B300975<br><br>Los Angeles County<br>Super. Ct. No.<br>18STRO07598 |

    APPEAL from orders of the Superior Court of Los Angeles County, Scott M. Gordon, Lawrence P. Riff, and Holly A. Thomas, Judges. Affirmed.

    Pamela Reny Monk, in pro per., for Respondent and Appellant.

    Tehrani Law Firm and Negar Tehrani for Petitioner and Respondent.

## INTRODUCTION

In February 2019, following a two-day evidentiary hearing, the trial court granted Evelyn Ward Smith's petition for an elder abuse restraining order (EARO) against her daughter, Pamela Reny Monk. On appeal, Monk challenges the following orders entered by the trial court after the EARO was issued: (1) the June 2019 order denying Monk's February 2019 motion to vacate the EARO under Code of Civil Procedure,[1] sections 663 and 437, subdivision (d) with prejudice, and awarding Smith's attorneys' fees and costs incurred in obtaining the EARO; (2) the July 2019 order declaring Monk to be a vexatious litigant under section 391, subdivision (b)(3); and (3) the January 2020 order awarding, as sanctions, Smith's attorneys' fees and costs incurred in defending against several motions filed by Monk in August 2019.[2] Monk contends these orders must be reversed because the trial court did not have jurisdiction to enter the EARO. She also suggests reversal is required because the trial judge who presided over the evidentiary hearing and denied her February 2019 motion to vacate the EARO was biased against her. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Smith owns a residential duplex located in Los Angeles (the "Property"). Sometime in 2012, she agreed to rent the Property's lower unit to Monk for $500 per month. At the time, Smith lived

---

1     All undesignated statutory references are to the Code of Civil Procedure.

2     At Monk's request, we consolidated the appeals in B303273, B300975, and B304035 for briefing and argument.

in the upper unit. She and Monk had not seen one another in over 20 years.

Monk allegedly stopped paying rent in May 2016. Consequently, Smith filed an unlawful detainer action against Monk in July 2016 (Case No. 16U11880).

In October 2016, Monk filed a quiet title action against Smith (BC639137). Her operative complaint alleged the Property was originally purchased by Cornel Fernando Smith (Cornel), who was Smith's husband and Monk's step-father. Monk alleged that in September 1985, without his knowledge, Smith forged Cornel's signature on a quitclaim deed conveying his interest in the Property to Smith, which was recorded in November 1985. Monk further alleged that in July 2016, Cornel recorded a quitclaim deed conveying his interest in the Property to her, which reflected his true intentions. She therefore alleged she had an interest in the Property, contending the deed recorded in November 1985 was invalid, and the deed recorded in July 2016 governed.

Smith filed a cross-complaint in Monk's quiet title action, asserting claims for quiet title, abuse of process, elder abuse, and intentional infliction of emotional distress. In support, Smith alleged she purchased the Property completely on her own in November 1985, and owned it solely in her own name since. According to Smith, Monk "fraudulently executed" the quitclaim deed recorded in July 2016 by "misrepresenting that she was [Cornel's] attorney-in-fact" in order "to defeat . . . Smith's unlawful detainer action, and to continue residing at the . . . Property rent free."

At a hearing held in June 2017, the parties orally agreed to settle Smith's unlawful detainer action and Monk's quiet title

3

action under section 664.6.[3] Specifically, Monk agreed to execute a quitclaim deed conveying any interest she had in the Property to Smith, and to dismiss her quiet title action with prejudice, in exchange for $1 and Smith's dismissal of her unlawful detainer action, and the claims asserted in her cross-complaint in Monk's quiet title action, with prejudice. Judge Frederick Shaller presided over the settlement proceedings, and the parties agreed he would retain jurisdiction to enforce the settlement pursuant to section 664.6. Upon Monk's execution of the quitclaim deed in his presence, Judge Shaller dismissed the parties' two pending cases with prejudice.

In October 2018, Smith filed a request for an EARO against Monk, alleging Monk physically abused her in August 2017 and October 2018. Following a hearing in November, at which Monk did not appear, Smith's request was granted.[4] Subsequently, Smith filed a request to modify the November 2018 EARO to include an order directing Monk to move out of the Property. The trial court granted the request and issued an amended EARO in December 2018.

_____

3    At the time, section 664.6 provided: "If parties to pending litigation stipulate . . . orally before the court[ ] for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

4    Judge James E. Blancarte, then a commissioner, presided over the proceedings relating to Smith's November 2018 EARO, and Smith's request for modification thereof. After becoming a judge, he also issued the January 8, 2019 order regarding the parties' ex parte applications for relief.

4

On January 8, 2019, Smith filed an ex parte application to modify the amended EARO to accurately reflect Monk's address and to grant her the right to change the locks on both units. That same day, Monk filed an ex parte application for an order vacating the amended EARO on the ground that she never received notice of Smith's October 2018 request for an EARO. The trial court declined to grant relief on an ex parte basis, finding there were "no exigent circumstances" warranting such relief. Instead, it set the matters for hearing on January 23, 2019.

At the January 23, 2019 hearing, the trial court[5] granted Monk's application for relief, finding Smith failed to serve her with notice of the October 2018 hearing on the request for an EARO. Consequently, the trial court vacated the amended EARO, denied Smith's motion to modify the amended EARO as moot, reinstated the temporary restraining orders issued in October 2018, and set Smith's request for an EARO for hearing on January 30, 2019.

Following a two-day evidentiary hearing, on February 4, 2019, the trial court granted Smith's request for an EARO, finding the evidence demonstrated Monk had financially abused Smith. Among other things, the EARO required Monk to move out of the Property immediately.

On February 22, 2019, Monk filed a motion to set aside the EARO under sections 663 and 473, subdivision (d).[6] She argued

_____

[5] Judge Scott M. Gordon (Ret.) presided over the underlying proceedings from January 23, 2019 to June 10, 2019.

[6] Section 663 provides, in pertinent part: "A judgment or decree, when based upon a decision by the court, . . . may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for

the EARO should be vacated because: (1) Smith violated the parties' 2017 settlement agreement by relying on claims she previously agreed to dismiss with prejudice to procure the EARO; (2) Monk "inadvertently and/or mistakenly" stated she "ha[d] no interest in" the Property at the hearing and had since discovered new evidence showing she "has a viable legal interest in the [P]roperty"; and (3) Smith's testimony at the hearing was false. The motion was set for hearing on April 12, 2019. At the hearing, however, the motion was "placed off calendar" because Monk "failed to appear" and "ha[d] not contacted the [c]ourt."

On May 3, 2019, Smith filed a request for: (1) an order declaring Monk a vexatious litigant within the meaning of section 391, subdivision (b); (2) "[a] pre-filing order prohibit[ing] [Monk] from filing any new litigation in courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed such that disobedience of such order may be punished as a contempt of court"; and (3) "[a]n order requiring [Monk] to furnish security or an undertaking in the form of a bond in the amount of $50,000[.]" Four days later, on May 7, 2019, Smith filed a motion for attorneys' fees and costs incurred in obtaining the February 2019 EARO, which was set for hearing on May 22, 2019.

At the May 22, 2019 hearing, Monk again failed to appear. The trial court granted Smith's motion for attorneys' fees and

_____

either of the following causes, materially affecting the substantial rights of the party and entitling the party to a different judgment: [¶] 1. Incorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts[.]" Per section 473, subdivision (d), "[t]he court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order."

clarified that Monk's February 22, 2019 motion to set aside the EARO was placed "off calendar with prejudice."

On June 10, 2019, the trial court entered its file-stamped "Findings and Order After Hearing" finalizing its rulings from the May 22, 2019 hearing. Specifically, the court stated Monk's February 22, 2019 motion to vacate the EARO was "denied with prejudice," and ordered Monk to pay Smith $38,427.51 in attorneys' fees forthwith.

In July 2019, the trial court[7] granted Smith's request for an order declaring Monk a vexatious litigant, and for a prefiling order prohibiting Monk from filing new litigation in California courts without approval of the presiding justice or the presiding judge of the court where the action is to be filed. The record does not indicate the trial court required Monk to post bond as Smith had requested.

In August 2019, Monk filed another motion to vacate the EARO under section 473, subdivision (d). She argued the trial court "lacked subject matter jurisdiction" over the EARO because the elder abuse claims on which Smith relied in support of her EARO request were "barred by res judicata." That same day, Monk also filed a motion to vacate the order entered in May 2019 requiring her to pay Smith attorneys' fees under section 473, subdivision (b).[8]

---

7       Judge Lawrence P. Riff presided over the hearing on Smith's vexatious litigant motion. He also granted the motion and signed the prefiling order.

8       Section 473, subdivision (b) states in relevant part: "The court may, upon any terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding

At a hearing held in November 2019, the trial court[9] denied both of Monk's motions filed in August 2019. Additionally, the court set Smith's request for attorneys' fees as sanctions against Monk for hearing in January 2020. Subsequently, at the January 2020 hearing, the trial court granted Smith's request for attorneys' fees as sanctions against Monk.

## DISCUSSION

## I.    Preliminary Considerations

As an initial matter, we consider Smith's contention that we need not address the merits of this appeal. In support of her position, she raises two arguments. We address each in turn.

### A.    Whether the Prefiling Order Bars this Appeal

First, we reject Smith's argument that this appeal is "prohibited" because Monk supposedly did not comply with the July 29, 2019 prefiling order by first obtaining permission to initiate it from the presiding justice of this Court. As Monk correctly points out, our Supreme Court has held "section 391.7's prefiling requirements do not apply" where, as here, "a self-represented litigant previously declared a vexatious litigant seek[s] to appeal an adverse judgment or interlocutory order in an action where he or she was the defendant [and which he or she did not initiate]." (*John v. Superior Court* (2016) 63 Cal.4th 91, 93

taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

9      Judge Holly A. Thomas presided over the remaining proceedings underlying this appeal.

(*John*).) In so doing, the Court acknowledged "the Legislature intended section 391.7 to bar only plaintiffs from filing motions or papers when appealing actions that they initiated[,]" and that "'[i]n appealing from a ruling in a case that he did not initiate, [the defendant] cannot be said to be "maintaining" the litigation any more than any defendant can be considered to be "maintaining" litigation by seeking to defend himself through the filing of pleadings and motions in the trial court.' [Citation.]" (*Id.* at p. 97.)

Smith's reliance on *Ogunsalu v. Superior Court* (2017) 12 Cal.App.5th 107 (*Ogunsalu*) is misplaced. In *Ogunsalu*, the Court of Appeal held "the vexatious litigant prefiling requirements of . . . section 391.7 apply to a self-represented litigant, previously declared a vexatious litigant, who filed a writ of mandate proceeding in the superior court to challenge the denial of his request to continue an administrative proceeding where the vexatious litigant was the respondent in the administrative proceeding." (*Id.* at p. 109.) Though the appellant in *Ogunsalu* essentially appealed from an adverse ruling in an administrative proceeding, *John* did not apply. (*Id.* at p. 112.) *John* did not "address . . . whether the person responding to an administrative writ proceeding who then initiates a writ of mandate proceeding in the superior court to challenge a ruling in the administrative proceeding is considered a 'defendant' under the vexatious litigant statutes." (*Ibid.*) Thus, applying the definitions set forth in section 391, "the superior court properly applied the vexatious prefiling requirement to [the appellant's] writ of mandate proceeding[.]" (*Id.* at p. 114.) Specifically, the appellant was "the 'plaintiff' because he commenced [the underlying] litigation (the writ of mandate proceeding) in the superior court[,]" and the

9

administrative agency was "the 'defendant' because it [was] the governmental entity against whom [the appellant] brought the litigation." (*Id.* at p. 113.)

In contrast with *Ogunsalu*, this appeal does not stem from any adverse rulings made in an administrative proceeding. Nor is it the product of a new action initiated by Monk in the superior court by way of writ of mandate. Instead, it is a direct appeal from adverse rulings made in litigation that Monk did not initiate. Monk was the defendant in litigation of Smith's request for an EARO. Accordingly, *Ogunsalu* does not apply, and Smith was not required to obtain permission to maintain these consolidated appeals.

### B. Whether this Appeal is Untimely

Next, Smith contends this appeal should be dismissed as untimely. At the outset, we note Smith contends the appeal is untimely only to the extent it challenges the February 2019 EARO and the June 2019 order finalizing the trial court's rulings denying Monk's February 2019 motion to vacate the EARO with prejudice and granting Smith's motion for attorneys' fees and costs. Smith does not appear to dispute the timeliness of the appeal with respect to the two other orders at issue, i.e., the orders entered in July 2019 and January 2020.

As discussed below, although Monk's notice of appeal challenging the February 2019 EARO was untimely, her notices of appeal from the three other disputed orders were timely. Consequently, even though we lack jurisdiction to review Monk's arguments regarding whether the February 2019 EARO was

10

correctly decided, we may consider her arguments challenging the orders entered in June 2019, July 2019, and January 2020.[10]

"The time for appealing a judgment is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal. [Citation.]" (*Van Beurden Ins. Servs. v. Customized Worldwide Weather Ins. Agency* (1997) 15 Cal.4th 51, 56 (*Van Beurden*).) In general, pursuant to California Rules of Court, rule 8.104(a)(1): "[A] notice of appeal must be filed on or before the earliest of: [¶] (A) 60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-endorsed copy of the judgment, showing the date either was served; [¶] (B) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service; or [¶] (C) 180 days after entry of judgment."

"Because appellate time limits are jurisdictional and cut off litigants' access to the courts, we strictly construe statutes and rules concerning the time in which to file a notice of appeal. [Citation.] 'On numerous occasions, California courts have resolved ambiguities concerning appellate jurisdictional time limits to extend, rather than limit, the right to appeal, even where such interpretations may be considered hypertechnical in

---

10     On January 31, 2020, the trial court also denied Monk's request for Judge Thomas's disqualification under section 170.1, subdivision (b). Monk's notice of appeal filed on February 3, 2020 states she was appealing from an order entered on January 31, 2020, but does not specify which one(s) she sought to challenge. Her reply brief, however, expressly clarifies she is only challenging the order requiring her to pay Smith attorneys' fees as sanctions.

other contexts.' [Citation.] Rules that measure jurisdictional time limits must 'stand by themselves without embroidery.' [Citation.]" (*In re Marriage of Lin* (2014) 225 Cal.App.4th 471, 474-475.)

With respect to the February 2019 EARO, the record does not reflect the superior court clerk or Smith served Monk with a document entitled "Notice of Entry" of the order, or a file-stamped copy of the order in the manner required by California Rules of Court, rule 8.104(1)(A) or (B).[11] Thus, under rule 8.104(a)(1)(C), Monk was required to file her notice of appeal no later than August 5, 2019.[12] She did not do so, however, until December 4, 2019. Her notice of appeal from the February 2019 EARO was therefore untimely, and we "ha[ve] no power to entertain" her arguments on whether it was correctly decided. (*Van Beurden, supra*, 15 Cal.4th at p. 56.)

With respect to the June 2019 order, Smith first contends the deadline to appeal is governed by rule 8.104(a)(1)(B) because she served Monk with "an unsigned copy" of the order by e-mail

---

11 Smith contends the deadline for Monk to file a notice of appeal from the February 2019 EARO is governed by rule 8.104(a)(1)(A) because Monk "was present in court and was handed a copy of the [EARO] by the Clerk of the Court." We disagree. Even where the appellant has actual notice of a restraining order because he or she received a copy in court, the superior court clerk or "the prevailing party still must comply with the service provisions in the court rules in order to shorten the appeals period from 180 days to 60 days. [Citations.]" (*In re Marriage of Lin, supra*, 225 Cal.App.4th at p. 476.)

12 The deadline for Monk to file her notice of appeal fell on August 3, 2019, which was a Saturday. Per California Rules of Court, rule 1.10(b), the deadline was extended to August 5, 2019.

on May 22, 2019. We disagree. To trigger the 60-day deadline, a party must serve the appellant "with a document entitled 'Notice of Entry' of judgment or a filed-endorsed copy of the judgment, accompanied by proof of service[.]" (Cal. Rules of Court, rule 8.104(a)(1)(B).) By Smith's own admission, however, the copy of the order electronically served on Monk was not file-endorsed because it was "unsigned" and did not have a stamp showing that it had been filed.

In the alternative, Smith contends rule 8.104(a)(1)(B) applies because she served Monk with a file-endorsed copy of the June 2019 order on August 19, 2019. Specifically, she contends the rule was triggered when Monk's counsel of record at the time was served with Smith's opposition to Monk's ex parte application for an order to shorten the time for hearing on Monk's motion for relief from the order awarding Smith attorneys' fees and costs, because a file-endorsed copy of the June 2019 order was attached as an exhibit to that document.

Again, we disagree with Smith's argument. Specifically, we are not convinced the inclusion of a file-endorsed copy of an order as an exhibit to a separate document served on the appellant satisfies the precise requirements of rule 8.104(a)(1)(B). Construing the rule strictly, as we must (*In re Marriage of Lin*, *supra*, 225 Cal.App.4th at p. 474), the plain language of rule 8.104(a)(1)(B) appears to require parties to serve a copy of the order *itself* (or a document entitled "Notice of Entry" of the order), accompanied by proof of service of *that specific document*. (See Cal. Rules of Court, rule 8.104(a)(1)(B).) Further, acceptance of Smith's proposed application of the rule runs the risk of requiring litigants to "guess, at their peril, whether [certain] documents . . . trigger the duty to file a notice of appeal." (*Alan v.*

13

*America Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 905.) "'Neither parties nor appellate courts should be required to speculate about jurisdictional time limits.' [Citation.]" (*Ibid.*)

Accordingly, we conclude the 60-day deadline set forth in rule 8.104(a)(1)(B) does not govern Monk's appeal from the June 2019 order. The record does not demonstrate Smith served Monk with a document entitled "Notice of Entry" of the order or a file-endorsed copy of the order, with proof of service of either of those specific documents. Consequently, Monk had to file her notice of appeal within 180 days after entry of the order, i.e., no later than December 9, 2019.[13] (Cal. Rules of Court, rule 8.104(a)(1)(C).) She filed her notice of appeal on December 4, 2019. Her appeal from the June 2019 order is therefore not subject to dismissal as untimely.[14]

Finally, we note Monk timely appealed from the trial court's orders entered on July 29, 2019 and January 31, 2020.

---

13 The deadline for Monk to file her notice of appeal fell on December 7, 2019, which was a Saturday. Pursuant to California Rules of Court, rule 1.10(b), it was extended to December 9, 2019.

14 Although not raised by either of the parties, we note Monk also filed a notice appeal on May 30, 2019 challenging the minute order entered on May 22, 2019. There the trial court initially issued its rulings denying Monk's motion to vacate the EARO with prejudice and granting Smith's motion for attorneys' fees and costs. In so doing, Monk filed a notice of appeal "after [the appealable order was] rendered but before it [was] entered[.]" (Cal. Rules of Court, rule 8.104(d)(1).) Her notice of appeal was therefore "valid and . . . treated as filed immediately after entry of [the June 2019 order]." (*Ibid.*) Accordingly, Monk's appeal from that order was timely even if rule 8.104(a)(1)(B) governed the deadline for its initiation.

She filed her notices of appeal of those orders on September 23, 2019, and February 3, 2020, respectively, well within the deadlines set forth in rule 8.104(a)(1).

## II.    Monk's Argument on Subject Matter Jurisdiction

Monk contends the June 2019 order must be reversed because in Smith's request for an EARO, Smith reasserted elder abuse claims already dismissed with prejudice in 2017 as part of a settlement agreement. Monk therefore contends the trial court "was without subject matter jurisdiction" to grant the EARO, as Smith's claims in support of her request were "barred by res judicata." (Bolded text omitted.) Further, she argues that because the EARO must be vacated as void under section 473, subdivision (d), the orders entered in July 2019 and January 2020 should also be reversed as they were direct consequences of the EARO.

Monk's contention is unavailing. As noted above, the crux of her argument is that the trial court lacked jurisdiction to enter the EARO, and therefore the EARO was void, because Smith's claims in support of her request for the EARO were barred by res judicata. It is well-settled, however, that "res judicata is a defensive plea and does not affect the court's jurisdiction. [Citations.]" (*Howard Greer Custom Originals v. Superior Court of Los Angeles County* (1948) 87 Cal.App.2d 816, 817; *David v. Hermann* (2005) 129 Cal.App.4th 672, 683 ["Res judicata is not a jurisdictional defense . . . . [Citation.]"].) Accordingly, Monk has not shown the EARO must be "set aside . . . [as] void" due to lack of jurisdiction. (§ 473, subd. (d).) For this reason, we also reject

15

her contention that the July 2019 and January 2020 orders must also be reversed.[15]

### III.   Monk's Argument on Judicial Bias

Next, Monk appears to contend the June 2019 order should be reversed because it was the invalid product of judicial bias. In support of this position, Monk asserts Judge Gordon spoke to her in a "demeaning" manner and treated her unfairly "at the detriment of [her] right to due process and equity under the law[.]" She also asserts that "off the record, as the parties packed up to leave [the evidentiary hearing on Smith's EARO in February 2019], Judge Gordon advised [Smith] to file a vexatious litigant action against [Monk]." (Bolded text omitted.)

At the outset, we note Monk cites no legal authority in support of her argument. Accordingly, we conclude it has been forfeited, and need not be considered on the merits. (See *Benach*, *supra*, 149 Cal.App.4th at p. 852 ["When an appellant . . . asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citation.]" (Footnote omitted.)].)

---

15     Additionally, Monk contends Judge Gordon improperly exceeded the scope of his authority by continuing to preside over the case after he granted her application to vacate the amended EARO issued in December 2018, as Judge Blancarte only transferred the case to him for purposes of holding a hearing on her application. She does not cite any legal authority in support of this assertion of error; thus, we decline to consider it. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*) [points of error raised but unsupported by citations to legal authority may be treated as forfeited].)

In any event, we further conclude Monk has not satisfied the "exceptionally stringent standard" governing judicial bias claims based on the due process clause. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589.) "It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation. [Citation.] The appellate court's role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair, as opposed to a perfect, trial. [Citation.] Mere expressions of opinion, based on observation of the witnesses and evidence, do not demonstrate judicial bias. [Citation.] Numerous continuous rulings against a party are not grounds for a finding of bias. [Citation.]" (*Ibid.*)

As noted above, Monk contends Judge Gordon was biased against her because: (1) he used a "demeaning" tone when he admonished her for repeatedly interrupting Smith's counsel, asked what right she had to be on the Property, and stated she "ha[d] no legal right to be in [the] Property"; and (2) he advised Smith to seek an order declaring Monk a vexatious litigant. We are unpersuaded. Monk's first point alleges bias based in part on her characterization of the judge's "tone," something that cannot be evaluated on the available record. Monk was not entitled to interrupt the proceedings and Judge Gordon was not only entitled—but obligated—to maintain order and decorum in the courtroom. As to her second point, Monk's contention is unsupported by citations to evidence in the record. Accordingly, we conclude Monk has not shown Judge Gordon exhibited bias and certainly has not shown he engaged in behavior that "was so

17

prejudicial it denied [her] a fair . . . trial. [Citation.]" *(Schmidt v. Superior Court, supra*, 44 Cal.App.5th at p. 589.)

Additionally, we acknowledge that in the background section of her opening brief, Monk claims Smith's counsel "made numerous solicitous comments about the Los Angeles Police Department [(LAPD)] which were irrelevant to the proceedings, [and] were meant to prejudice Judge Gordon, an ex-LAPD officer, who continues to have ties to the LAPD." (Bolded text omitted.) Specifically, she states Smith's counsel "blurted out, off the record, as Judge Gordon was walking to his chambers," that "'Monk is suing the LAPD,'" in order to "prejudice him" by "playing up to [his] ties to the [LAPD.]" (Bolded text omitted.) For the first time in her reply brief, Monk endeavors to make a legal argument based on these assertions, contending Judge Gordon was biased against her because she had filed a lawsuit against the LAPD.

We need not address Monk's argument on the merits, as "'[p]oints raised for the first time in a reply brief will ordinarily not be considered . . . .' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) In any event, her contentions are not supported by the citations to the record she has provided, nor any other portions of the record.[16] Moreover, she has not

---

16     In the portion of the reporter's transcript Monk references in connection with what she describes as Smith's counsel's "solicitous comments about the Los Angeles Police Department" (bolded text omitted), Smith's counsel stated she was seeking an order modifying the December 2018 EARO because the LAPD officers who had been asked to execute the EARO's move-out order pointed out there was a discrepancy between the address listed in the move-out order and Monk's address.

demonstrated Judge Gordon's prior connection to the LAPD constituted "a constitutional risk of actual bias or prejudgment requiring disqualification. [Citation.]" (*Schmidt. v. Superior Court, supra*, 44 Cal.App.5th at p. 589.)

## IV.  Monk's Challenge to the Vexatious Litigant Order

Lastly, Monk contends the trial court "made a prejudicial error in declaring [her] a vexatious litigant" because "[she] does not meet the test of a [v]exatious litigant." Her contention, however, is unsupported by any reasoned argument, citations to the record, or citations to legal authority. Accordingly, we conclude it has been forfeited and decline to consider it on the merits. (*Benach, supra*, 149 Cal.App.4th at p. 852 ["An appellant must provide an argument and legal authority to support his [or her] contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.]"]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 ["'The appellate court is not required to search the record on its own seeking error.' [Citation.] Thus, '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived. [Citation.]' [Citations.]"].)

19

## DISPOSITION

The orders of the trial court are affirmed. Smith shall recover her costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


MANELLA, P.J.


COLLINS, J.