Filed 4/21/23 T.W. v. M.S. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| T.W., Plaintiff and Respondent, v. M.S., Defendant and Appellant. | D079500 (Super. Ct. No. DN188889) |

APPEAL from the Judgment of the Superior Court of San Diego County, Margo Lewis Hoy, Judge. Affirmed.

M.S., in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 2016, plaintiff/mother T.W. and defendant/father M.S. had a son, C. Shortly after C.'s birth, the parties became embroiled in litigation that has

now spanned more than six years, leading to four separate appeals that are currently pending before this court.[1]

In this particular appeal, M.S., who is appearing in propria persona as he has throughout the trial court proceedings, seeks review of the June 4, 2021 judgment (Judgment) concerning among other subject matters T.W.'s move-away request and child custody of C., which is supported by a 24-page final statement of decision and ruling issued by the trial court on March 30, 2021 (SOD).[2] M.S. claims the Judgment is "inconsistent with, and [is] a clear violation of California's public policy" as provided in the Family Code; and

---

[1] See also D079984 (T.W.'s appeal from the June 30, 2021 order denying her request to permanently renew the domestic violence restraining order (DVRO) against M.S.); D080174 (M.S.'s appeal from the August 11, 2021 order denying his own request for a permanent DVRO against T.W.); and D080542 (T.W.'s appeal from the February 28, 2022 order reducing M.S.'s child support obligation).

[2] Based on his opening brief, M.S. in the instant appeal also appears to raise issues concerning the August 11, 2021 order denying his request for a permanent DVRO against T.W. Because the August 11 order is the subject of a separate appeal (see fn. 1, *ante*), we decline here to address any error concerning this order.

that the court erred in not awarding him physical custody of C., or at a minimum, joint custody.[3]

As we explain, we reject M.S.'s claims of error and affirm the Judgment.[4]

---

[3] M.S. also claims he was denied due process of law. However, he did not brief this issue on appeal and therefore we deem it forfeited. (See *Telish v. State Personnel Bd.* (2015) 234 Cal.App.4th 1479, 1487, fn. 4 (*Telish*) [the failure to raise an argument in the opening brief forfeits the issue on appeal].) On April 3, 2023, just days before oral argument in this court, M.S. filed a request to hold T.W. in contempt (1) for failing to notify the court of a change in address, as required by California Rules of Court, rule 2.200, and (2) for engaging in what he describes as her "regime of harassing actions[,] provocation [and] incitement, with the ultimate goal of alienating [him] from [C.]." We now deny his motion. First, although a court "has a duty to exercise the power to protect the integrity of the court and the judicial process," it "must do so 'with great caution.'" (*DeGeorge v. Superior Court* (1974) 40 Cal.App.3d 305, 312.) The failure to inform this court of a change of address does not rise to the level of an act of contempt worthy of punishment. (See Code Civ. Proc., § 1209 [acts or omissions constituting contempt].) Second, as a court of review we cannot provide the relief M.S. seeks in his contempt motion, which includes changes both to in-person and virtual visitation with C., and his demand that he be added to C.'s birth certificate. These are matters that must be addressed in the trial court, on a proper record.

[4] T.W. did not file a respondent's brief in the instant appeal. "However, we do not treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but independently examine the record and reverse only if prejudicial error is found." (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203; see *In re Bryce C.* (1995) 12 Cal.4th 226, 232–233 [same].)

3

# I. RULES GOVERNING APPELLATE REVIEW

As a preliminary matter, we address the rules of procedure that govern this appeal.

Although M.S. is representing himself, self-representation does not excuse a party's obligation to furnish a satisfactory record. An appellant who chooses to self-represent must follow the same rules that apply to lawyers. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 (*Nwosu*).)

It is axiomatic that a trial court's judgment or order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) Accordingly, the appellant has the burden of showing error. To do so, the appellant must present this court with an adequate record for review (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574–575), regardless of whether that record is prepared by counsel or, as in the instant case, by a party (*id.* at p. 575; *Nwosu, supra,* 122 Cal.App.4th at p. 1246).

California Rules of Court, rule 8.122(b)[5] sets out the required contents of a clerk's transcript, M.S.'s choice of record. In addition to other requirements, a clerk's transcript "must" include "[a]ny . . . document filed or lodged in the case in superior court" pertaining to the issue(s) on appeal (rule 8.122(b)(3)(A)) and "[a]ny exhibit admitted in evidence, refused, or lodged" (*id.*, (b)(3)(B)).

In the instant appeal, the clerk's transcript does not contain documents identified in both the Judgment and the register of actions that appear to be highly relevant, if not critical, in deciding this appeal, including, by way of example only, T.W.'s September 24, 2019 request for order on which the

---

[5]     All further rule references are to the Rules of Court.

4

Judgment is based. (See *Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1412 ["To the extent the trial court relied on documents not before us, our review is hampered. We cannot presume error from an incomplete record."].)

In addition, M.S. lodged more than 500 pages from 36 "exhibits" for our consideration not only in connection with the instant appeal but also in the related appeals between the parties. However, M.S. did not identify which, if any, of these "exhibits" were "admitted in evidence, refused, or lodged" during the four-day trial that resulted in the SOD and Judgment.[6] (See rule 8.122(b)(3)(B).)

M.S. also violated rules relating to appellate briefs. Rule 8.204(a)(2)(C) requires an appellant to "[p]rovide a summary of the significant facts limited to matters in the record." Here, M.S.'s summary of the facts is decidedly one-sided, contains a considerable amount of argument, and is not "limited to matters in the record." (See *Nwosu*, *supra*, 122 Cal.App.4th at p. 1246 [appellants who challenge the decision of a trial court based upon the evidence " ' "are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*" ' "].)

Despite the insufficiency of the record, M.S.'s failure in his brief to summarize all "significant facts limited to matters in the record," and his confusing briefing that tends to lack coherent legal argument, we nonetheless

---

[6] Because of M.S.'s failure to make this identification and because our review, with certain exceptions not applicable here, is limited to the record that was before the trial court, we decline to consider any of these 36 "exhibits" in resolving this appeal. (See *Center for Biological Diversity v. Department of Conservation* (2018) 26 Cal.App.5th 161, 170 [" 'It has long been the general rule and understanding that "an appeal reviews the correctness of a judgment [or order] as of the time of its rendition, upon a record of matters which were before the trial court for its consideration." ' "].)

will do our best to address his claims of error in this appeal. In so doing, we will rely on the clerk's transcript in the instant appeal; the reporter's transcript, which includes only one of the four-days of trial;[7] and the settled statement of the trial court filed on December 9, 2021, addressing M.S.'s motion for reconsideration of the Judgment.[8]

## II. FACTUAL AND PROCEDURAL BACKGROUND

Briefly, the trial court issued its SOD after a four-day trial that commenced on February 1, 2021. This factual and procedural background is derived primarily from the SOD.

### A. Overview

M.S. and T.W. met in 2015, dated, but never married. They had a child together, C., born in August 2016. On the day of C.'s birth, M.S. signed a declaration confirming paternity. T.W. nonetheless filed a petition to establish relationship in September 2016. M.S. responded by again admitting paternity. In March 2017, M.S. requested genetic testing and, pending those results, the family court ordered there be no visitation between

---

[7] Insofar as M.S. challenges the sufficiency of the evidence supporting the trial court's factual findings, we must presume the unreported testimony demonstrates an absence of error. (See *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*).)

[8] The December 9 settled statement provides that M.S. also filed a motion for new trial. However, M.S. has neither included the new trial motion in the clerk's transcript nor argued the issue on appeal. We therefore consider any claim of error based on its denial forfeited. (See *Nwosu, supra*, 122 Cal.App.4th at p. 1246 [failure to present arguments with citation to legal authority can result in forfeiture of any contention that could have been raised on appeal]; *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 [a brief should contain legal argument with citation to the authorities and if none is made, the court may treat the point as forfeited].)

M.S. and C. In July 2017, the court reviewed the test results and M.S. signed an advisement and waiver of rights re: establishment of parental relationship of C. The court ordered M.S. unsupervised visitation with C. four days per week, from 1:00 p.m. to 5:00 p.m.

Since July 2017, the "issues [between the parties] regarding custody and visitation have been contentious and extensive," leading to the appointment of Dr. Stephen Doyne to perform a psychological evaluation of the parties to assist the trial court. During the evaluation, M.S. withdrew his consent and refused to continue. At T.W.'s request, the court allowed Dr. Doyne to finish the evaluation without M.S.'s participation, which resulted in a report dated September 4, 2019.[9] The court noted M.S.'s lack of judgment led him to be declared a vexatious litigant, and to the issuance of both the DVRO and a civil restraining order protecting T.W.'s counsel and his staff, after what the court described as M.S.'s "horrendous and threatening" conduct against them.

The trial court also found T.W. lacked judgment by adopting a narrative about how M.S. came to have custody of his daughter L., suggesting it was through "nefarious means, possibly even kidnapping." The court found there was no credible evidence to support this narrative; that T.W. adopted it to support her claim C. allegedly was "not safe" around M.S.; that she even went so far as to hire a private investigator to investigate M.S. and his custodial arrangement with L., who in turn used an alias to contact L.'s mother I. in Africa and suggest L. was in " 'harm's way' " while in M.S.'s care; that T.W. knew of these tactics and at trial admitted they were "threatening and would be disturbing to M[.S.] and I[.]"; and that from birth, T.W. had

---

[9]    Dr. Doyne's report is not part of the record in the instant appeal.

"limited intentions of sharing C[.] with M[.S.,] and certainly not on a 50/50 basis."

## B. Move-Away

After discussing the factors identified in *In re Marriage of LaMusga* (2004) 32 Cal.4th 1072 (*LaMusga*) among other authorities (discussed *post*), the trial court granted T.W.'s move-away request, finding: (1) it was in C.'s best interests to remain in the primary physical custody of T.W.; (2) M.S., in his effort to obtain physical custody of C., had overcome the presumption under Family Code section 3044[10] that it would be detrimental to the best interests of C. for M.S. to have custody of the child due to the June 2018 DVRO; and (3) the move to New York would not occur until August 23, 2021, allowing C. to start kindergarten while also giving M.S. the opportunity to reestablish his relationship with the child after a long no-contact period.

## C. Custody and Visitation

Although the trial court ordered T.W. to have sole legal custody of C., it reserved jurisdiction to reconsider this decision once M.S. became "more involved in the parenting of C[.]," which would put M.S. in a better position to "assist in making joint decisions regarding [C.'s] health, education and welfare." The court also considered the DVRO in making this custody determination, while noting it was set to expire in June 2021.

---

10 Subdivision (a) of Family Code section 3044 provides in relevant part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . , there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . . This presumption may only be rebutted by a preponderance of the evidence."

The trial court included a detailed visitation schedule both before and after C.'s move. Before the move, the visitation schedule was designed to allow C. to slowly reestablish his relationship with M.S., with an increase in parenting time predicated on eight weeks of compliance with the previous step in the step-up visitation schedule. These visits were unsupervised and once established, included overnights and weekends. After the move to New York, the court set visitation for holidays and summer vacation, including beyond summer 2028.

In making the visitation order, the trial court noted it was not a "final order," as it was "dependent on the future actions and behaviors of T[.W.] and M[.S.]"; and that it would reserve jurisdiction to continue to make orders to carry out C.'s best interests.

## III. DISCUSSION

### A. Standard of Review

"The standard of appellate review of custody . . . orders is the deferential abuse of discretion test. [Citation.] The precise measure is whether the trial court could have reasonably concluded that the order in question advanced the 'best interest' of the child. We are required to uphold the ruling if it is correct on any basis, regardless of whether such basis was actually invoked." (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 (*Burgess*).)

" ' "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 319.) "We accept as true all evidence tending to establish the correctness of the trial court's findings, resolving every conflict in the evidence in favor of the

9

judgment." (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702.)

## B. Guiding Principles

As courts have recognized, move-away cases often involve "heart-wrenching circumstances" that "would challenge the wisdom of King Solomon" (*LaMusga, supra*, 32 Cal.4th at pp. 1091, 1101); and "there is frequently no solution that is fair to everyone involved" (*In re Marriage of Bryant* (2001) 91 Cal.App.4th 789, 794 (*Bryant*)). This case is no different. As the trial court here recognized, the observation by the Supreme Court that these cases "are 'not easy' is certainly apt, if not an understatement."

Move-away cases are even more difficult when the move is a long distance one, as in the instant case. Although the law recognizes it is in the best interests of the child to have "frequent and continuing contact with both parents" (Fam. Code, § 3020, subd. (b)), joint custody and frequent contact are not always feasible if the parents will be living thousands of miles apart, and in those situations the trial court is in the unenviable position of choosing one parent to be the primary custodial parent. And while a trial court may be tempted to require the moving parent simply to stay put, the law provides otherwise: "the court must proceed on the assumption that the parent will in fact be moving, and must fashion a custody order that is in the best interests of the minor accordingly." (*Mark T. v. Jamie Z.* (2011) 194 Cal.App.4th 1115, 1120 (*Mark T.*); see also *Bryant, supra*, 91 Cal.App.4th at p. 794 ["That the move of a custodial parent may have an adverse effect on the frequency of contact by the noncustodial parent is not by itself determinative. What is determinative is the best interest of the children, given that one parent is moving and the other is not."].)

Moreover, the moving parent is *not* required to show the move is necessary or even wise. (*Burgess*, *supra*, 13 Cal.4th at p. 36.) *Burgess* explained, "ours is an increasingly mobile society," and "it is unrealistic to assume that . . . parents will permanently remain in the same location . . . or to exert pressure on them to do so." (*Id.* at pp. 35–36; *LaMusga*, *supra*, 32 Cal.4th at p. 1098 [courts "must not" issue an order that effectively coerces a parent to abandon his or her plans to relocate, for example by transferring custody to the other parent unless the relocation plan is abandoned].)

The focus in a move-away case is on the " 'best interest of the child.' " (*In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 955 (*Brown*).) When making a determination on a move-away request, "the trial court has 'the widest discretion to choose a parenting plan that is in the best interest of the child.' (Fam. Code, § 3040, subd. [(d)].) It must look to *all the circumstances* bearing on the best interest of the minor child." (*Burgess*, *supra*, 13 Cal.4th at pp. 31–32.) It must consider " 'the health, safety, and welfare of the child' "; " '[a]ny history of abuse by one parent against the child or against the other parent' "; and the " 'nature and amount of contact with both parents.' " (*Id.* at p. 32, quoting former Fam. Code, § 3011, subds. (a)-(c).)

*LaMusga* also described the factors a trial court should consider in move-away cases: the child's interest in stability and continuity in the custodial arrangement; the distance of the move; the child's age; the child's relationship with both parents; the relationship between the parents, including, but not limited to, their willingness to put the child's interest above their own; the child's wishes if the child is mature enough for this inquiry to be appropriate; the reasons for the proposed move; and the extent to which the parents currently share custody. (*LaMusga*, *supra*, 32 Cal.4th at p. 1101; accord, *Brown*, *supra*, 37 Cal.4th at pp. 960–961.)

11

These factors, frequently referred to as the "*LaMusga* factors," are not exclusive. (*Jane J. v. Superior Court* (2015) 237 Cal.App.4th 894, 905 ["list of factors is not exhaustive"]; Fam. Code, § 3011, subd. (a).) "The weight to be accorded to such factors must be left to the court's sound discretion." (*LaMusga, supra*, 32 Cal.4th at p. 1093.) Given this deference, it is not surprising that the Supreme Court has noted that reversal in move-away cases is infrequent and ordinarily involves "unusual circumstances." (*LaMusga*, at p. 1092.)

*LaMusga* emphasizes the broad scope of a trial court's decision regarding a parent's move-away request, noting "this area of law is not amenable to inflexible rules. Rather, we must permit our superior court judges—guided by statute and the principles we . . . affirm in the present case—to exercise their discretion to fashion orders that best serve the interest of the children in the cases before them." (*LaMusga, supra*, 32 Cal.4th at p. 1101; see *Burgess, supra*, 13 Cal.4th at p. 39 ["[B]right line rules in this area are inappropriate: each case must be evaluated on its own unique facts."].)

## C. Best Interests of C.

We begin with the trial court's finding that it was in C.'s best interests to remain in the primary physical custody of T.W. In the SOD, the court considered 22 factors in conducting this "delicate and difficult" inquiry (see *LaMusga, supra*, 32 Cal.4th at p. 1078); made even more complicated in this case by the extreme animosity between the parties; their "inability as co-parents to provide stability and continuity" for C.; and their lack of personal judgment and refusal to put C.'s best interests ahead of their own.

Courts recognize that the "paramount need for continuity and stability in custody arrangements—and the harm that may result from disruption of

12

established patterns of care and emotional bonds with the primary caretaker—weigh heavily in favor of maintaining ongoing custody arrangements." (*Burgess, supra,* 13 Cal.4th at pp. 32–33; see *Ragghanti v. Reyes* (2004) 123 Cal.App.4th 989, 999 [in making a custody order, "a paramount concern is the need for stability and continuity in the life of a child, and the harm that may result from disruption of established patterns of care and emotional bonds"].) "When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. That need will often dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child." (*Burchard v. Garay* (1986) 42 Cal.3d 531, 538 (*Burchard*).)

Here, the trial court found that since June 2018 when C. was two years old, he has had no contact with M.S. due to the June 2018 DVRO protecting both him and his mother; that the "only stability and continuity of care" C. has known during his young lifetime was with T.W.; and that at the time of trial, T.W. had sole legal and physical custody of C. Although limited, the record supports these findings and the reasonable inference therefrom that C. has a stronger attachment to T.W. than M.S. We therefore cannot say the court abused its discretion when it found C.'s best interests was to remain in the primary physical custody of his mother, where established patterns of care and emotional support exist. (See *Burchard, supra,* 42 Cal.3d at p. 538; *LaMusga, supra,* 32 Cal.4th at p. 1093; *Burgess, supra,* 13 Cal.4th at p. 32.)

In affirming the trial court's decision that C. remain in the primary physical custody of T.W., we are not unaware of the court's findings in the SOD that T.W. lacked personal judgment, particularly in regard to her hiring of the private investigator who used an alias to contact L.'s mother I. in Africa and suggest M.S. was not properly caring for their daughter; that M.S.

13

is a "wonderful parent" to L. and facilitates contact between L. and I.; and that since C.'s birth, T.W. "was not receptive to M[.S.'s] wish to share C[.] equally" and "was unwilling and unable to co-parent and support a relationship between M[.S.] and C[.]"

M.S. on appeal highlights these findings. But as the trial court also noted, move-away cases are " 'not easy,' " a sentiment shared by many other courts including our Supreme Court. (See *LaMusga, supra,* 32 Cal.4th at pp. 1091, 1101.) And we note the court was not required to give the findings concerning T.W. more weight than it gave to the findings concerning M.S., particularly given its conclusion that *both* parents lacked personal judgment in this case and M.S. was still subject to the DVRO.[11] (See *LaMusga,* at p. 1093 ["weight to be accorded to such factors must be left to the court's sound discretion"].)

M.S. also argues the trial court erred by granting the move-away request without knowing where T.W. and C. would be living. We disagree.

---

[11] Although largely ignored by M.S. on appeal, the trial court also found he lost " 'trust' " in the "family law system" and reacted in a very "combative" and detrimental way, stating he was " 'trying to make noise' " and likened his situation "to that of a person being confronted in the woods by a large bear." The court noted M.S. had "clearly made a great deal of noise in this case" by refusing to complete the psychological evaluation with Dr. Doyne and "to listen to judicial officer[s'] instructions"; by "disrupt[ing] proceedings, insult[ing] the court and counsel," which ultimately led the court to find he was a vexatious litigant; and most notably, by sending threatening emails to T.W. and her attorney in May 2018, resulting in issuance of the DVRO and the civil restraining order. The court further noted that, although M.S. was denied visitation with C. as a result of the restraining order, it did offer M.S. support through family court services (FCS) to allow him to "move in the right direction so that a relationship [with C.] could resume," but that M.S. refused those services, instead waiting "until the current trial to have his voice heard."

The SOD expressly provides that once T.W. and C. move to New York, "[e]ach party shall keep the other informed of their current **physical** address and telephone numbers at all times."  In addition, the court noted it retained jurisdiction "to continue to make orders to carry out the best interests of C[.]"  That T.W. did not have to disclose this information at the time of trial, assuming then she even knew where she and C. would be living once they moved, did not render the court's move-away order invalid.

To the contrary, given the circumstances of this case, we applaud the trial court for putting the best interests of C. ahead of the interests of either parent; ordering that C. engage in therapeutic support as he moved toward reestablishing a relationship with M.S. and sibling L.; and creating a visitation schedule both before and after the move to New York that facilitated C.'s relationship with them for years to come.  We cannot say on this record that the court's move-away order was "arbitrary" or "capricious" and resulted in a miscarriage of justice.  (See *In re C.B.* (2010) 190 Cal.App.4th 102, 123.)

## D.  Changed Circumstances

M.S. argues that the trial court erred in finding T.W.'s move-away request was in "good faith."  Specifically, he claims that T.W. misrepresented the fact her family lives in New York as the reason for her move.  Assuming this claim of error is not forfeited on appeal based on the incomplete trial transcript and M.S.'s failure to summarize all material evidence in his brief,[12] we conclude substantial record evidence supports the "good faith" finding.

---

[12]  See *Fain, supra,* 75 Cal.App.4th at p. 992; *Nwosu, supra,* 122 Cal.App.4th at p. 1246.

15

Indeed, at trial T.W. testified her mother lives in New York "the majority of the time," although her mother also owned a home in Florida; that her mother's "whole family" also lives in New York; and that her father was contemplating a move from New Hampshire to New York. The SOD also found T.W. was moving because the "New York area is more affordable and she will be able to obtain a home with a yard for C[.]"; and that M.S. has not paid any support for C. that would in part "relieve [T.W.] of the high costs associated with living in San Diego County." This evidence is more than sufficient to support the court's finding that T.W.'s reason to move with C. was in "good faith." (See *In re K.H.* (2022) 84 Cal.App.5th 566, 601 [" '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' "]; *Bruno v. Hopkins* (2022) 79 Cal.App.5th 801, 823 [" ' "A single witness's testimony may constitute substantial evidence to support a finding." ' "].)

In any event, we note the trial court in the instant case could not "prevent" T.W. from moving to New York. (See *Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1202 [reversing trial court's decision refusing to allow custodial parent to move to Rhode Island with minor child because the trial court applied the wrong legal test in finding the custodial parent failed to show the move was "necessary," in contravention of *Burgess*, which had disapproved of a series of cases that "had required proof that the relocation is ' "essential and expedient," ' ' "for an imperative reason," ' or at least ' "necessary to the custodial parent" ' "].) And, although substantial evidence supports the finding that T.W.'s move-away request was not in bad faith, we note the good or bad faith of a custodial parent's request to move away with a

child is "only one potential factor" that a court should consider, and "does not mean that the court should apply any standard other than what would be in the best interests of the child" in making this determination. (See *Mark T.*, *supra*, 194 Cal.App.4th at p. 1131.)

Given the broad discretion afforded the trial court in deciding a move-away request, and the record in the instant case that it was in the best interests of C. to remain in the primary physical custody of T.W., we cannot say the court abused its discretion in not awarding M.S. physical and/or joint custody of C.

## E. Motion for Reconsideration

### 1. *Brief Additional Background*

On April 22, 2021, M.S. filed a motion for reconsideration of the SOD under Code of Civil Procedure section 1008, subdivision (a). In support, M.S. argued the trial court should reconsider the move-away order and the visitation provided in the SOD between C. and M.S. due to C. being "physically, mentally and emotionally harmed by the absence of [M.S.] in his life," as the child "yearn[ed] to spend more time with [M.S.] and [sibling] L." M.S. further argued "[n]ew and/or different facts and/or circumstances have been discovered and/or weren't addressed by the Court" in the SOD regarding C., including that M.S. had "no knowledge of the Child's health, safety and welfare for the past 35 months"; and that based on M.S.'s observations during visits, it was "clear[ ]" there were "deficiencies" in C.'s "development" caused by T.W.'s parenting.

The trial court heard the reconsideration motion on May 26, and on May 28 issued a multipage "Findings and Order After Hearing" denying the motion. The court ruled M.S. had not met his burden to provide "any new evidence or law or a satisfactory explanation for his failure to produce any

new evidence at an earlier time"; that M.S. did not present any credible evidence at the May 26 hearing on the motion that would support his request for reconsideration; that his motion was merely "an attempt to file additional objections and argument to the court[']s [SOD]"; and that, to the extent M.S. also requested a new trial, he failed to provide notice of such, and the grounds for a new trial.

From his brief, it is not altogether clear whether M.S. is also appealing from the denial of his motion for reconsideration, inasmuch as he provided little or no argument to support any claim of error based on the May 28 order. (See *Telish*, *supra*, 234 Cal.App.4th at p. 1487, fn. 4; *Dieckmeyer v. Redevelopment Agency of Huntington Beach* (2005) 127 Cal.App.4th 248, 260 ["appellant's failure to raise an argument in its opening brief waives the issue on appeal"].) However, given M.S. included the trial court's December 9, 2021 settled statement regarding reconsideration, in the interest of justice we address the merits of the May 28 order.

2. *Guiding Principles and Analysis*

Under Code of Civil Procedure section 1008, subdivision (a), a party affected by an order granted by the court may seek reconsideration of the order based on new law or facts. "The party seeking reconsideration must provide not just new evidence or different facts, but a satisfactory explanation for the failure to produce it at an earlier time." (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.) We review a trial court's ruling on a motion for reconsideration for abuse of discretion. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212 (*New York Times*).)

Here, we have reviewed M.S. reconsideration motion as well as the trial court's December 9 settled statement and find no error. We note M.S. did not cite any new law in support of his motion. As to new facts, we defer to the

18

court's assessment that M.S. failed to proffer any "credible evidence" of such, a finding that, in any event, is well-supported based on our own review of the record. (See *New York Times*, *supra*, 135 Cal.App.4th at p. 212; see also *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 498 [an appellate court may not reweigh the evidence and instead "must defer to the trial court's determinations of credibility"].) We therefore reject on the merits any claim of error based on the court's May 28 order denying M.S.'s reconsideration motion.

## IV. DISPOSITION

The Judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


DO, J.