Filed 10/19/23  Suslova v. Stremovskiy CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| EKATERINA SUSLOVA,<br><br>    Respondent,<br><br>    v.<br><br>OLEG STREMOVSKIY,<br><br>    Appellant. | D081240<br><br><br>(Super. Ct. No. 22FL002081N) |


APPEAL from an order of the Superior Court of San Diego County, Victor M. Torres, Judge.  Affirmed.

Oleg Stremovskiy, in pro. per., for Appellant.

Ekaterina Suslova, in pro. per., for Respondent.


I

INTRODUCTION

Oleg Stremovskiy (Father) appeals a domestic violence restraining order (DVRO) protecting Ekaterina Stremovskiy (Mother) and the couple's minor daughter, Y.A.S. (Daughter), from Father for a period of three years. The DVRO prohibits Father from abusing the protected parties and permits

only peaceful contact between Father and the protected parties to effectuate court-ordered visitations between Father and Daughter. We affirm.

## II

## BACKGROUND

Father and Mother got married in 2007. They had Y.S. (Son) in 2012, and Daughter in 2019.

After Daughter's birth, the family of four lived in Georgia for about six months. In January 2020, Mother and Daughter moved to Los Angeles, while Father and Son remained in Georgia. In December 2021, Father and Son moved to San Diego. The following month, Mother and Daughter moved to San Diego as well.

On February 24, 2022, Mother filed a request for a DVRO against Father. Because the parties have not included the DVRO request in the appellate record, we are unable to summarize its allegations. However, according to the parties' appellate briefs, the DVRO request alleged that Mother suffered years of physical, emotional, and verbal abuse at Father's hands. The DVRO request asked the court to designate Mother, Son, and Daughter as protected parties.

The trial court issued a temporary restraining order granting temporary legal and physical custody of both Son and Daughter to Mother. At some point thereafter, Son was removed as a protected party from the temporary restraining order.

On or about March 8, 2022, Father filed an objection to the DVRO request, which denied the alleged abuse.

The trial court set the matter for an evidentiary hearing, which took place over three half-day sessions on April 26, June 8, and August 31, 2022, and one full-day session on September 9, 2022. During the hearing, the court

2

received testimony from multiple witnesses including Mother, Father, Mother's mother, Father's sister, and two professional visitation monitors who supervised visitations between the parents and their children.

Of pertinence here, Mother testified that Father physically abused her at least three times. First, she testified he pushed her while she was breastfeeding Daughter, causing her to land on the edge of a bed and sustain a back injury. Second, she testified he forcibly grabbed her and pulled her from a vehicle during a verbal confrontation. Third, she testified he once shoved her through an open doorway. Mother also testified that Father called her derogatory and vulgar names, maliciously coached Son to mistreat her, read her electronic messages and listened to her telephone calls without her consent, threw her clothing away without her permission, and secretly tape-recorded many of his conversations with her.

At the conclusion of the hearing, the trial court issued a three-year DVRO protecting Mother and Daughter—but not Son—from Father. On the record, the court stated Father's credibility "came under serious attack" during the hearing, and it found Mother was "credible on a number of points" and "not credible on a number of other points." The court did not specify all of the testimony it found credible or not credible, but it opined that Mother's testimony concerning one instance of physical abuse—Father's shoving of Mother through an open doorway—was "very credible."

## III

## DISCUSSION

Father appeals the DVRO protecting Mother and Daughter. He proceeds with his appeal in propria persona.

" 'To prevail on appeal, an appellant must establish both error and prejudice from that error. [Citation.] In order to demonstrate error, an

3

appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record. Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record. [Citations.] Similarly, we may disregard conclusory arguments that are not supported by pertinent legal authority.' " (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597 (*Champir*); *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146 (*United Grand*) [" 'an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "].)

These principles of appellate practice apply to Father, even though he is proceeding with this appeal as a self-represented litigant. " '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247; see *Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574 ["Although [a party] is representing himself in propria persona, he is not exempt from the rules governing appeals."].) "In other words, when a litigant accepts the risks of proceeding without counsel, he or she is stuck with the outcome, and has no greater opportunity to cast off an unfavorable judgment than he or she would if represented by counsel." (*Burnete v. La Casa Dana Apartments* (2007) 148 Cal.App.4th 1262, 1267.)

In his opening brief, Father presents arguments that largely describe his version of events and seek to cast doubt on Mother's credibility and the probative value of her evidence. For instance, he argues Mother's motivation for filing the DVRO request was to retaliate against him for seeking a divorce from her; Father was physically unable to shove Mother through the open doorway as she testified (in testimony the court found "very credible")

because he had a tendon tear in his elbow when the incident occurred; Mother "falsified" documents she tried to introduce into evidence; an audio recording played in court for impeachment purposes allegedly revealed Mother insulting and physically abusing Father; Son suffered emotionally and academically while he was in Mother's sole physical custody; and the inclusion of Daughter as a protected party in the DVRO "deprive[d] [him] of the opportunity to communicate" with Daughter and "deprived [her] of the opportunity to be with her brother ...." Additionally, Father claims he "did not have the opportunity to present [his] case" based on the duration of time the court allowed him to testify and cross-examine Mother.

None of these are cogent arguments, accompanied by proper citations to the appellate record and supporting legal authorities, articulating why the trial court erred in granting the DVRO, or why the DVRO should otherwise be reversed. Father has forfeited his challenge to the DVRO by not making a cogent argument for reversal, supported by proper appellate record citations and legal authorities. (*Champir, supra*, 66 Cal.App.5th at p. 597; *United Grand, supra*, 36 Cal.App.5th at p. 146.) Thus, we must affirm the DVRO.

The argument that perhaps most closely resembles a cogent argument for reversal of the DVRO—albeit an argument unsupported by any legal authority—is Father's claim he did not have a sufficient opportunity to present his case. Even if we were to consider this argument, despite Father's forfeiture of it, we would still affirm the DVRO because the trial court neither abused its discretion nor deprived Father of his due process rights.

The court gave the parties ample time to present their cases over the four sessions composing the evidentiary hearing. It allowed Father to call all of the witnesses he desired (three in total) and to call one of those witnesses out of order during Mother's case in chief. It granted Father significant

5

leeway in his nearly two-hour cross-examination of Mother.  It also permitted him to testify for approximately two hours.  During Father's two-hour testimony, the court repeatedly advised him how much time he had remaining (until the end of the fourth hearing date), instructed him to avoid or limit discussion of topics with little or no relevance, and admonished him to focus on the subject matter of the proceeding—i.e., whether he abused Mother.  Notwithstanding these frequent warnings, Father spent much of his testimony discussing irrelevant or marginally relevant issues like Mother's fidelity during the marriage.  On this record, we discern no error.[1]

---

[1]     Mother filed a motion requesting that we strike thirteen documents included in the appellant's appendix.  We grant the motion as to documents that were not before the trial court, including:  (1) an email from the minors' counsel to the parents' counsel concerning the scope of the temporary restraining order; (2) a report prepared by Family Court Services; and (3) the parents' schedules of assets and debts (FL-142 forms).  (*Doers v. Golden Gate Bridge, Highway & Transportation District* (1979) 23 Cal.3d 180, 184, fn. 1 ["As a general rule, documents not before the trial court cannot be included as a part of the record on appeal."].)  We deny the motion as to the remainder of the documents identified in Mother's motion to strike.

IV

DISPOSITION

The domestic violence restraining order is affirmed.  Respondent is entitled to her appellate costs.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

BUCHANAN, J.