Filed 3/19/24

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| N.M., <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> W.K., <br><br>     Defendant and Appellant. | A168081 <br><br> (Alameda County <br> Super. Ct. No. HF23137250) |

Defendant, W.K. (Husband), appeals after the trial court issued a domestic violence restraining order (DVRO) protecting plaintiff, N.M. (Wife), and the couple's daughter. In the published portion of our opinion we address the following question: When a petitioner seeks a domestic violence restraining order, is a respondent who has already responded to the petition entitled to a continuance of the hearing on the request "as a matter of course"? (Fam. Code, § 245, subd. (a).) We conclude that the trial court did not have a mandatory duty to grant a continuance under these circumstances, and we further conclude that it did not abuse its discretion in proceeding with the hearing.

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III of the Background and parts I, IV, and V of the Discussion. All undesignated statutory references are to the Family Code.

1

In the unpublished portion of our opinion, we reject Husband's remaining challenges to the DVRO, we deny Wife's request that we dismiss the appeal, and we deny the parties' respective requests for sanctions. We therefore affirm.

## BACKGROUND

### I.     DVRO Request and Orders

Wife filed a request for a DVRO on February 6, 2023, protecting herself and the couple's child, Nyla, from Husband. She alleged a number of incidents of domestic abuse. Among them, Wife alleged that in October 2022, during an argument and in the presence of then two-year-old Nyla, Husband slapped Wife and punched her head and body, rendering her unconscious. She also described an incident a couple of weeks later, when Husband closed the car door on her legs as she was trying to take Nyla out of her car seat, and an incident on February 5, 2023 when Husband, who was no longer living in the couple's home, tried to break into the house. An earlier alleged incident took place in 2020, when Wife was pregnant. Husband slapped her across the face so hard she was knocked out; when she regained consciousness he was dragging her across the floor. He grabbed her face, threatened her, and told her to respect him. She suffered a black eye as a result.

Wife provided a declaration that attached photographs of her injuries after the October 2022 incident and subsequent text messages between her and Husband. Those messages included Husband telling her he "didn't hit [her] hard at all." In another series of text messages, Wife accused him of hitting her in front of Nyla, causing injuries to her head, and threatening to kill her, and he replied, "I apologize . . . like I said I'm not proud of what happened."

The trial court issued a temporary restraining order on February 7, 2023, requiring Husband to stay away from Wife and Nyla, except for court-ordered visits. Wife was given custody of Nyla, and Husband was granted unsupervised visits three times a week.

At a March 15, 2023 hearing, Husband was represented by counsel. Wife requested a continuance so she could seek counsel of her own. Husband's counsel objected, saying Wife was ready to proceed with the merits of the petition. The trial court continued the hearing to April 4, and Husband's counsel urged that no further continuances be granted.

Husband filed a response to the DVRO request on March 29, 2023, in which he asserted that Wife's allegations were "exaggerated," that he had not abused her, and that he posed no threat to her.

Wife filed a supplemental declaration in support of her request for a DVRO on March 30, 2023, which Husband's counsel received the following day. Wife stated that Husband demanded deference, citing their religious tradition, and became enraged and beat her, sometimes to unconsciousness, if he thought she " 'misbehaved.' " She detailed regular physical abuse that began shortly after their marriage in 2013, which included reckless driving while she was a passenger, at least one death threat, and slaps and punches, often accompanied by demands for respect. She also attached copies of additional text messages between the two in which Husband told her she must obey and respect him and "fall in line," told her she did not have "authority" to decide to divorce him, acknowledged hitting her "to knock some sense in [her] head," said she had to be "treated with acute stimulation for the information to be transmitted," and said he had a "[G]od given right to discipline" her if she "disrespect[ed]" him. She also submitted a declaration by a former neighbor who had heard "terrifying arguments" in which

3

Husband became enraged and shouted abusive language at Wife, and on one occasion in May 2014 heard "the distinct sounds of blows to flesh" during an argument.

The continued hearing on the DVRO took place on April 4, 2023. Before it began, Husband's new attorney requested a continuance, arguing that there would be multiple witnesses and that Husband would like to introduce "the totality of the text messages" rather than the "snippets" Wife had submitted. The trial court explained that a single incident of domestic violence would be sufficient to support a DVRO, concluded multiple witnesses would be unnecessary for Wife to meet that burden, and declined to continue the hearing. The court indicated it would disregard the declaration of the neighbor, who was not present at the hearing. At the hearing, Wife testified to years of domestic abuse over the course of the marriage, culminating in the incident in October 2022 when Husband beat her to unconsciousness in the presence of Nyla.

Husband painted a different picture in his testimony, characterizing Wife as emotionally volatile and himself as merely responding to her aggressiveness when he hit or pushed her. He explained away Wife's loss of consciousness as the result of a medical condition that caused sleepwalking and fainting. According to Husband, during the October 2022 incident, Wife attacked him with a knife while holding Nyla. He acknowledged he had written the text messages, but he said they were "cherry picked" and taken out of context, and he denied ever hitting or slapping her.

The trial court found Wife's testimony credible and Husband's explanations not credible, it found it was more likely than not that Wife's injuries were caused by Husband striking her rather than by falling and fainting, and it concluded the text messages alone were sufficient to provide a

4

basis for the DVRO.  The court issued a restraining order for three years. Wife retained custody of Nyla, with supervised visitation twice a week for Husband.

## II.  Notice of Ex Parte Hearing on Visitation

On March 29, 2023, while these events were unfolding, Wife filed a notice seeking an ex parte hearing on a request to modify the custody provisions of the DVRO.  Husband apparently received a copy of the papers the next day.  The hearing was to take place on April 12; Wife announced that at the hearing she would seek an order that Husband receive no visitation until Nyla received a therapeutic assessment.  In support of the request, Wife submitted a declaration asserting, among other things, that Husband had committed many acts of abuse during the 10-year course of their marriage; that he had refused to hand Nyla over to Wife's mother after a visit; that afterward Nyla appeared distressed about visits with Husband; and that Husband violated the protective order by delivering balloons to her home.

At the conclusion of the April 4, 2023 hearing on the DVRO, at Husband's request, the court continued the hearing on visitation from April 12 to May 30, 2023.[1]

## III.  Motion for Reconsideration

Husband moved for reconsideration of the trial court's DVRO on the ground the trial court erred in denying his request for a continuance.  He argued he did not have adequate time to address the allegations made in the declarations and ex parte request that Wife filed shortly before the hearing,

---

[1] The trial court was initially under the impression that the ex parte hearing on visitation was scheduled in the couple's separate dissolution action rather than in this action.

5

which raised additional allegations about the history of the parties' relationship.[2]

The trial court denied the motion to reconsider on May 18, 2023, finding the motion did not present new law, circumstances, or facts as required by section 1008 of the Code of Civil Procedure. It also reiterated that on April 4 it had found that the text messages alone—which Husband acknowledged he wrote—supported issuance of a DVRO. As a result, it explained, any late filings raising other allegations were irrelevant. The court sanctioned Husband $2,500 for filing a frivolous motion. (Fam. Code, § 271.)

Husband timely appealed from the April 4 and May 18, 2023 orders.

## DISCUSSION

### I. Request to Dismiss Appeal

We note at the outset of our discussion that Wife asks us to dismiss the appeal because of deficiencies in the opening brief and appellant's appendix filed by Husband, who is representing himself in this appeal. Although we are mindful that self-represented litigants are obligated to follow appellate rules (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247), we decline to dismiss the appeal on this basis. To the extent Husband relies on material not before the trial court at the time it made its decisions, we will disregard that evidence. (See *Cypress Security, LLC v. City and County of San*

---

[2] In his reply brief, Husband asserts for the first time that he was not served with Wife's *original* declaration submitted as part of her request for a DVRO. He attaches a February 10, 2023 proof of service of various documents on him, including the request for a DVRO; the proof of service does not separately list the declaration among the documents served. But he points us to nothing in the record indicating he argued in the trial court that he was not served with the original declaration, either at the hearing on the DVRO or in his motion for reconsideration.

6

*Francisco* (2010) 184 Cal.App.4th 1003, 1014.) We also disregard arguments made for the first time in Husband's reply brief. (See *In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 214.) Otherwise, we shall consider the appeal on the merits.

## II. Mandatory Continuance to Respond to DVRO Petition

Husband contends the trial court erred in denying his request for a continuance, to which he argues he was entitled as a matter of right. He relies on section 243, which requires a respondent to receive notice at least five days before an ex parte hearing on a petition for a temporary restraining order, and on section 245, subdivision (a), which provides that a respondent is "entitled, as a matter of course, to one continuance for a reasonable period, to respond to the petition."

We are unpersuaded by Husband's reliance on either of these provisions. As to section 243's requirement of five days' notice of a hearing on a DVRO application, Husband had notice of the hearing much more than five days before it took place. He cites no authority suggesting Wife's supplemental declaration would restart section 243's five-day clock.

Section 245 is of no more assistance to Husband. By the time he requested a continuance, he had *already* responded to the petition. In an analogous context, another division of this court held that a virtually identical provision governing workplace violence restraining orders does not entitle a respondent to a continuance after having responded to a petition for a restraining order. (*Goals for Autism v. Rosas* (2021) 65 Cal.App.5th 1041, 1044 [discussing Code Civ. Proc, § 527.8, subd. (p)].) In the course of its analysis, the court noted the similarities between the provisions governing continuances of hearings on workplace and domestic violence restraining orders, and explained that the language of section 245, subdivision (a)

"underscores that the purpose in enacting the mandatory continuance provision was to give respondents an opportunity to respond to the allegations in the petition for the restraining order." (*Goals for Autism*, at p. 1047.) We similarly conclude that, having already responded to Wife's petition, Husband was not entitled "as a matter of course" to a restraining order to allow him "to respond to the petition." (§ 245, subd. (a).)

## III. Discretionary Continuance

Subdivision (b) of section 245 separately authorizes the trial court to grant a request for continuance "on a showing of good cause." (*Malinowski v. Martin* (2023) 93 Cal.App.5th 681, 691–692.) Such a continuance is discretionary rather than mandatory. (*Id.* at p. 692.) When, as here, "[a] motion for continuance is addressed to the sound discretion of the trial court," we reverse if denial of a continuance denied the applicant a fair hearing. (*Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395.)

The trial court's denial of a continuance did not deprive Husband of a fair hearing. Husband had already declared himself prepared to proceed at the March 15, 2023 hearing, when the matter was continued over his objection. He was aware at least four days before the April 4 hearing that the text message exchanges between himself and Wife would be at issue, and he makes no showing that the lack of a continuance deprived him of adequate time to make a showing of their full context. Indeed, in cross-examining Wife, Husband's counsel confronted her with a photograph that he claimed refuted her claim that he struck her on October 4, 2022, and in his own testimony Husband provided context for the text messages. The trial court did not consider the neighbor's declaration, obviating any need for Husband to prepare to meet that evidence. In these circumstances, we see no abuse of discretion in the trial court denying his request for a continuance.

8

## IV.    Effect of Ex Parte Filings

Husband argues, however, that he did not have adequate time to respond to the allegations in the documents supporting Wife's new request for an ex parte hearing.  And, he contends, Wife did not meet her evidentiary burden in her ex parte filings.  These arguments confuse two different hearings.  The ex parte hearing referred to in those papers was not due to take place until April 12, *after* the April 4 hearing at which the court granted the DVRO, and the April 12 hearing was continued to May 30 at Husband's request.  That proposed hearing on modifying visitation is not before us in this appeal, which is from the April 4 and May 18, 2023 orders only.

## V.    Prejudice

In any case, we may not reverse unless there was a "miscarriage of justice" (Cal. Const., art. VI, § 13; see *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56–57), and on this record any error in denying a continuance was harmless.  In explaining the basis of its ruling on April 4, 2023, the trial court first found that the only credible explanation for Wife's injuries after the October 2022 incident—an incident that she had raised in her initial DVRO request—was that Husband struck her.  The court based its decision on the testimony and text messages regarding that incident, and Husband acknowledged the messages were between himself and Wife.  These messages, the court made clear both at the April 4, 2023 hearing on the DVRO and the May 18 hearing on the motion for reconsideration, in its view provided a sufficient basis for the DVRO.  On this record, Husband has not shown any basis to think the court might have acted differently had he been granted a continuance, and we can discern none.

Finally, the parties have each asked us to sanction the other.  We decline to award sanctions on appeal.

9

# DISPOSITION

The April 4, 2023 order, and the May 18, 2023 order denying rehearing, are affirmed.  Respondent shall recover her costs on appeal.


TUCHER, P.J.

WE CONCUR:

PETROU, J.
RODRÍGUEZ, J.

*N.M. v. W.K.* (A168081)

10

Trial Court:     Alameda County Superior Court

Trial Judge:     Hon. Nikki Clark, Commissioner

Counsel:     W.K., in pro. per., for Respondent and Appellant

Cabello & Lezin, Connie Cabello, Justyn Lezin; and Law Office of Peter Gold, Peter Gold for Plaintiff and Respondent